ALPHEUS J. HYATT *vs.* HUGH BOYLE.—*June* 1833.

B sold H a quantity of tobacco, and delivered a bill of parcels, which described it as follows :—" 24 kegs of tobacco, branded (*Parkin*) at four months, weighing, &c., at 13½ cents. B had received this tobacco for sale on commission—sold it, and guarantied the sale to his principal. The purchase was made at the plaintiff's counting room, where the tobacco was. It was branded, as stated in the bill of parcels, and not examined by either party prior to, or at the time of the sale. The price agreed for was a full price for a merchantable commodity; and the brand in question was a favorite one, always considered remarkably fine, though it fluctuated in price from 8 to 13½ cents per pound. The tobacco in part proved unsound, and none of it had been re-sold; the purchaser proposed to return that which was unmerchantable, and pay for the residue. In an action for the price, HELD, that there was no implied warranty of quality in this contract; that

in relation to the quality of the tobacco, nothing was stipulated; and that the terms on the part of the vendor were complied with by the delivery of the tobacco, branded in conformity with the bill of parcels.

It is a general principle of the common law, that in sales of personal property, the seller is not answerable for any defects in the quality or condition of the article sold, without there is an express warranty or fraud.

The exception to this rule, that where there is no opportunity of inspection, the seller impliedly warrants the quality of the commodity sold, only applies to those cases, where the examination at the time of the sale is, morally speaking, impracticable; as where goods are sold before their arrival or landing. The mere fact of the inspection being attended with inconvenience or labor, is not equivalent to its impracticability.

Where there is a warranty of quality in the sale of a chattel, and an offer to return the goods purchased in due time, if the warranty is violated, the purchaser, in an action against him for the price, may defeat the action, whether the vendor knew of the defect of quality or not; for the *scienter* in such case is immaterial.

The case of *Osgood vs. Lewis*, 2 *Harris & Gill*, 495, explained, and *Thornton Winn*, 12 *Wheat*, 183, denied.

APPEAL from *Baltimore* County Court.

This was an action of *Assumpsit* commenced by the appellee, against the appellant and one *Seth Hyatt,* merchants, trading at *Washington,* under the firm of *Seth Hyatt & Co.* on the 24th of November, 1827. The appellant only, was taken upon the *capias.* Issue was joined upon the plea of *non-assumpsit.*

1. At the trial the plaintiff, *Boyle* proved that he sold and delivered to the defendants, a quantity of tobacco, on the 10th of December, 1825, and read in evidence to the jury, the following bill of parcels and letter:

"*Baltimore,* 10th of December, 1825. Messrs. *Seth Hyatt & Co.*——Bought of *Hugh Boyle,* 24 kegs tobacco, branded (*Parkin*) at 4 months:——the whole weighing nett 3543 pounds, at 13½ cents: $478.31. Cash paid drayage, 50 cts. $478.81."

"Dear Sir.——Above you have invoice and bill of lading for 24 kegs manufactured tobacco, which I hope will arrive safe, and please. I have drawn on you for the balance due, which please honor, and oblige your obedient servant, *Hugh Boyle.*"

And also read in evidence, by consent, the following statement:—" *Thomas Higinbothom* declares, that he sold the tobacco mentioned in the original bill of parcels, to one of the partners of the house of *S. Hyatt & Co.*, who came to the counting house of the plaintiff, to purchase the same. That this tobacco was in kegs, and had been consigned to the said *Boyle*, who sold the same on commission, and guarantied the said sale to his principal; and that tobacco of the same brand from *Richmond*, had been frequently sold by plaintiff before, and since; and that no complaint had been made of its quality, or condition. That the tobacco was sent from *Boyle's* counting room, to the *Washington* packet. That the tobacco sold was *Parkin's crooked brand*, as stated in the bill of parcels, and was not examined by either party, prior to, or at the time of sale."

The defendants then proved, that upon the receipt of the tobacco by them, it was placed in a dry warehouse, and when received the kegs appeared to be in good order. That defendants are merchants in *Washington*, and bought the article to sell again, and that the plaintiff knew this fact; and also proved, that tobacco branded, *Parkin's crooked brand*, is a merchantable commodity, well known in the market among merchants, and that it varies in price, from 8 to $13\frac{1}{2}$ cents per pound, according to the quality, and that the price agreed for in this case was a full price for first quality of *Parkin's crooked brand*. Defendants further proved, that no demand occurred for said tobacco after they received it, for about sixty days after the receipt, when one keg of it was sold to *Samuel Stetinius*, who opened it in the middle, as is the custom to open such an article. That it was then found to be unsound, rotten and unmerchantable, and was returned to said defendants. That an inspection of two other kegs immediately took place, and both proved equally unsound. That the brand of *Parkin's crooked brand* was a favorite brand, and always considered remarkably fine. That upon *Boyle's* drawing on defendant for the amount, they declined paying, and assigned as

a reason that the tobacco was injured. That about six months afterwards, the plaintiff came to *Washington*, and another keg was opened n his presence which proved to be tolerably good; immediately on which, the defendants offered to have all the rest opened, and to pay for all that were merchantable, and to return the rest, which the plaintiff refused. That the tobacco has always since been on hand, and has never been sold, or offered for sale by the defendants, but has been perfectly useless to them; that except the four kegs above mentioned, none other has been examined. The defendants also read the following letter from the plaintiff to them.

"*Baltimore, February* 17*th,* 1826. Messrs. *Seth Hyatt & Co.* Gentlemen,—Your respects of the 16th is this moment received,—I am surprised at its contents. I need not say, that I considered I was doing you a favor, by selling you that lot of tobacco at the time I did, but it was evident, as I had the same offer from another house, for the whole lot, and I gave you the preference, believing as I then did, it was your interest to have it.

I have sold more than 1000 kegs of that brand, and this is the first, I have ever heard complained of. Neither could you suppose for a moment, that I could now, after more than sixty days from the time it was purchased, and forty days after the sales were made out, and the accounts settled with the owner, have any thing to do with it. I would be exceedingly sorry that the purchase should turn out a bad one. I would at all times rather give you a good bargain than a bad one, but I cannot be accountable for this. Respectfully, &c. *Hugh Boyle.*"

And the defendant also proved, by a witness who did not read the letter of the 16th February, 1826, but who heard *Seth Hyatt,* while writing it, say, it contained a proposal to *Boyle,* to take back the tobacco; and on cross examination of *Higginbothom,* he stated, he did not believe there was an offer to return, but the lapse of time had been so great, he did not recollect.

The plaintiff then prayed the court to instruct the jury, that he was entitled to recover the whole amount of the purchase money.

*First,* because from the evidence in the cause, there was no warranty express, or implied, and the defendants, under the circumstances, took the tobacco at their risk.

*Secondly,* that there was no sufficient evidence to show that the defendants had ever offered to return the tobacco, and that if no offer was made to return the tobacco, the plaintiff is entitled to recover.

*Thirdly,* that there being no evidence to show fraud on the part of the plaintiff, and no evidence to show that the plaintiff had agreed to take back the property after the sale, the defence of warranty, even if there had been an implied one, cannot be set up in this action, it being an action to recover the price agreed upon for the goods. Upon this prayer the court (Hanson, A. J.,) said, that although there might be, in the opinion of the jury, evidence of an offer on the part of the defendants, to return the tobacco within a reasonable time, yet as there was no warranty constituted by the contract proved between the parties, the plaintiff is entitled to recover,—and also, even if the contract had contained a warranty, it was no defence, in an action to recover the value of the goods sold, unless the defendants tendered a return of them within a reasonable time, and the plaintiff knew of the unsoundness of the article—and directed the jury that the plaintiff was entitled to recover the full amount of the purchase money. The defendant excepted.

1. The plaintiff and defendants having given the evidence as stated in the first bill of exceptions, which it is agreed shall be part of this, the defendant prayed the opinion of the court to the jury, that in this case, there is evidence of a warranty, that the tobacco sold was merchantable, and that if the jury believe it was not merchantable at the time of its sale, the plaintiff is not entitled to recover for that part which was not merchantable at the time of sale.

2. If the jury believe, that the tobacco sold, at the time of sale was unmerchantable and unsound, and unfit for sale, and that the defendant at the time of sale, did not examine it, and within a reasonable time offered to return the whole of it, or such part as was unsound and unmerchantable, and the plaintiff refused to receive the same; then the plaintiff is not entitled to recover for the unsound and unmerchantable tobacco, which was so at the time of sale. Both of which opinions the court refused to give.

The defendant excepted, and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Walsh,* for the appellant, contended,

1. That the bill of parcels connected with the other evidence, was in law a warranty, that the tobacco was merchantable, and that if it was not merchantable, it was a defence in this action. *Osgood vs. Lewis, 2 Harr. and Gill,* 495. The brand by which the tobacco was described was proved to be a great favorite, and to give the article a high value in the market. It was the same as though the bill of parcels had expressly asserted, that the article was fine and merchantable.

This brand, the evidence shows, enjoyed a high reputation in the market, in which the plaintiff resided. He must be presumed therefore, to have known it, and to have described the article by its brand, for the purpose of inducing the defendant to believe he was buying an article of good quality. *Bridge vs. Wain, 2 Serg. and Low,* 487. *Tye vs. Fynmore, 3 Camp. Rep.* 461.

2. There was evidence to go to the jury, that the appellant offered to return the tobacco, or such parts as were unmerchantable, and that the appellee refused to receive it. *Yates vs. Pym, 6 Taunt.* 447.

Hyatt vs. Boyle.—1833.

3. There was an *implied* warranty, that the tobacco was merchantable, and that it would answer the purpose for which it was sold. The defendant was not bound to examine, as the brand, *per se*, imported it to be merchantable. 2 *Kent Com.* 247. It was known to plaintiff, that defendant purchased to sell, and therefore the former is to be considered as impliedly warranting that the article will answer the purpose contemplated. *Gray vs. Cox,* 10 *Serg. and Low.* 285. *Bluett vs. Osborne,* 2 *Ib.* 437. *Gardiner vs. Gray,* 4 *Camp. Rep.* 144.

And he insisted, that this defence is available in an action for the price of the goods, without proof of fraud on the part of the plaintiff. *Okell vs. Smith* 2 *Serg. and Low.* 317. *Johnston vs. Cope, et al.* 3 *Harr. and Johns.* 89.

*Gill,* for the appellee.

All manufactured tobacco is branded with the name of the maker, and such is the case with most other manufactured articles. This practice must be discontinued, if describing the article by the brand, is to be construed into a warranty. He contended, that the brand was attached as a mere description, and was no warranty. This action is to recover the price of goods sold and delivered, and not returned to the seller. If therefore there had been a warranty, the plaintiff must prevail; as to defeat the action, there must not only have been a return, or offer to return in a reasonable time, but it must be shown, that plaintiff knew of the unsoundness of the article; otherwise, the remedy of the vendee is upon the warranty. *Thornton vs. Wynn,* 12 *Wheat. Rep.* 185, 193.

The cases cited on the other side, were actions on the warranty by the vendee. 4 *Johns. Rep.* 421. *Bluett vs. Osborne,* 2 *Serg. and Low.* 437. *Sands and Crump vs. Taylor and Lovett,* 5 *Johns.* 395, 410. But in this case, there was no warranty expressed or implied. *Johnston vs. Cope, et al.* 3 *Harr. and Johns.* 89. The bill of parcels says nothing of the quality or condition of the goods. *Osgood*

*and Lewis*, 2 *Harr. and Gill*, 521, 523. All that the bill of parcels affirms, is the fact, that the tobacco was of a particular brand, and that was true.

*Johnson*, in reply.

1. The tobacco was expressly warranted to be merchantable, or at least, not to be unsound or rotten.

It is conceded, that it was to be of *Parkin's crooked brand*, and the delivery of an article corresponding only in name, with that sold, is not a compliance with the vendor's contract.

The article delivered must be substantially the same as that sold. The evidence shows, that tobacco branded as this was, is a fine and merchantable commodity.—Can a contract for the sale of such an article, be complied with by the delivery of an inferior, and unsound tobacco, because the *kegs* are branded with the right brand?

The tobacco should be proved to be of the make of *Parkins*, and to be of merchantable quality. *Gardiner vs. Gray*, 4 *Camp.* 144. *Osgood vs. Lewis*, 2 *Harr. and Gill*, 495. *Ib.* 524.

The intention of the parties was, the one to buy, and the other to sell, a saleable article—The defendant bought to sell again, and the plaintiff knew it. When plaintiff told defendant, he would sell him *Parkin's crooked brand*, he told him in effect, that he would sell him a merchantable tobacco. *He affirmed* it to be so, and that is equivalent to a warranty. *Ib.* 2 *Harr. and Gill*, 518.

2. But if the warranty was not express, it was implied. When a party buys for a particular purpose known to the vendor, the former has a right to expect a commodity that will answer the purpose contemplated. *Laing vs Fidgeon*, 6 *Taunt.* 108. *Tye vs. Fynmore*, 3 *Camp.* 461. *Okell vs. Smith*, 2 *Serg. and Low.* 316. *Davis vs. Noak*, *Ib.* 437.

If the vendor, to evade the effect of his implied warranty, relies upon the fact, that the vendee might have examined for himself, he must show affirmatively, that such an opportunity existed. 3 *Kent Com.* 374.

3. The warranty, whether express or implied, is a defence to the present action, and defendant will not be driven to a cross suit. The doctrine in 12 *Wheat,* 185, would beget a circuity of action, without the least necessity, and would be productive of injustice by subjecting an innocent defendant to the costs of the first action. Upon this point he referred to 2 *Saund. Pl. and Ev.* 917. 1 *Selw. N. P.* 149. (no) *Farnsworth vs. Garrard,* 1 *Camp.* 38. *Fisher vs. Samuda, Ib.* 190. *Payne vs. Whale,* 7 *East.* 274. *Basten vs. Butter, Ib.* 479. *Ib.* 482. 2 *Stark. Ev.* 641. *Miller vs. Smith,* 1 *Mason,* 437. *Taft vs. The Inhabitants of Montague,* 14 *Massa. Rep.* 282. *Okell vs. Smith,* 2 *Serg. and Low.* 316. *Lomi vs. Tucker,* 19 *Serg. and Low.* 255.

DORSEY, J., delivered the opinion of the court.

There is no pretence that the appellee was not a *bona fide* holder of the tobacco sold, without knowledge of its unsoundness, or that the kegs were not branded with the genuine mark of *Parkin's crooked brand*; but it is insisted that there was an implied warranty of quality, according to the principles settled by this court in *Osgood vs. Lewis,* 2 *Harr. and Gill,* 495. A fair exposition of the court's opinion in that case, will lead to no such inference. The general principle of the common law, is there more than once reiterated : "that in sales of personal property the seller is not answerable for any defects in the quality or condition of the article sold, without an express warranty or fraud." In enumerating some of the exceptions to this rule, it is stated, that if the buyer had no opportunity of ascertaining by inspection, the quality of the article, there is an implied warranty that it be saleable in the market, under the denomination by which it was sold." To sustain the appellant's position of implied warranty, no aid can be drawn from this exception. The purchase was of twenty-four kegs of tobacco, branded with *Parkin's crooked brand,*" and by that denomination were they saleable in the market.

Of the quality of that tobacco nothing was stipulated. The terms on the part of the vendor were complied with, by the delivery of tobacco, thus characterized by the brand. By the brand it was saleable in the market, and that was the only assurance of quality, on which the vendee relied. Once admit the doctrine contended for by the appellant, and as to all commercial transactions, you, in effect, annihilate the distinction between warranty of title and warranty of quality. Every man who sells a barrel of flour, fish, pork, or any commodity subject to inspection, or which had acquired a reputation in the market, will be held impliedly, to warrant both title and quality. To such a length, this court feels itself wholly unauthorised to extend implied warranties. Nor could it do so, without explicitly overruling the case of *Johnson vs. Cope, and others,* 3 *Harr. and Johns.* 89, and unsettling the principles it has recognized in *Osgood and Lewis.*

Much stress has been laid on an isolated paragraph, extracted from *Osgood and Lewis,* in which this court have said, that "it is not sufficient that the article delivered, abstractedly bear the name of that contracted for; it must do more, there is an implied warranty that it be of that quality, which a commodity of that name must possess to be saleable in the market." But construe this sentence in conjunction with the remaining parts of the court's opinion, and the interpretations attempted to be affixed to it, cannot for a moment be sustained. The remark was predicated upon the case of *Bridge vs. Wain,* 1 *Stark,* 504, and immediately followed the reference made to it. In that case, *Wain* had sold to *Bridge* a quantity of "scarlet cuttings," an article in which the *English* dealt with the *Chinese* to a considerable extent. The proof was, that "scarlet cuttings" were understood in the market to mean cuttings of cloth only, without any admixture of serge or other materials; and that the article sold to the plaintiff did contain a quantity of serge, &c.

The position stated by this court, was designed to be nothing more than what was considered as there decided ; that although the article delivered, abstractedly speaking, was scarlet cuttings, yet it was not scarlet cuttings of that quality, which were saleable in this market as such.    So, in the present case, the delivery of any tobacco not branded as per the bill of parcels, no matter what its excellence might be, would be no compliance with the terms of sale : it would not be sufficient, because it did not possess that quality, attribute, characteristic mark, viz. *Parkin's crook-ed brand,* by which it was known, and rendered saleable in the market.

" It was urged too, that from the nature of the article, and the manner in which purchases of it are made, the appellant had no opportunity of inspection, and that therefore the seller impliedly warranted its quality.    But this exception to the general rule of *caveat emptor* does not apply to cases circumstanced like the present; but to those, where the examination at the time of sale, is, morally speaking, impracticable, as where goods are sold before their arrival or landing.    The mere fact of the inspection being attended with inconvenience, or labour, is not equivalent to its impracticability.    If the purchaser desire to avoid it, and yet obtain the protection it would afford him, he must do so by exacting from the vendor an express warranty of quality.

" It was likewise insisted, that the appellee, knowing the purpose for which the tobacco was purchased, impliedly warranted it to be suitable therefor ; that the opinions of Chief Justice *Abbott,* and Lord *Ellenborough,* on which such a doctrine rests, were cited with approbation by this court in *Osgood & Lewis.*    But this is not the fact.    No sanction or approval was then, or is now designed to be given to those opinions.    They were simply referred to, as showing how much further, some of the *English* judges appeared disposed to go, in engrafting exceptions upon the rule, *caveat emptor,* than this court had gone in the case of *Osgood & Lewis.*

The County Court were right in instructing the jury, as in the first bill of exceptions, that there was no warranty of the quality of the tobacco sold. But they were clearly in error in the latter part of their instruction; that although the contract contained a warranty, and an offer to return the goods had been made by the vendee in due time; yet that it was no defence to the action unless the plaintiff knew of the unsoundness of the article. The *scienter* in such a case need not be alleged, and if charged, need not be proved.

This error of the court below, however, furnishes no ground for reversing their judgment. The appellant sustained no injury from it; as he had offered no proof either of a warranty, or a fraudulent *scienter*. And upon no event therefore, nor upon the assumption of both, or either of these grounds, was it competent for the jury to have given a verdict in his favor.

The same remarks are applicable to the opinion of the County Court, in the second bill of exceptions.

**JUDGMENT AFFIRMED.**