# QUEEN CITY GLASS COMPANY *vs.* PITTSBURG CLAY POT COMPANY.

*Sales—Implied Warranty of Goods Sold by Manufacturer—Warranty Extends to Use Contemplated—Breaking of Clay Pots in Glass Furnace—Recoupment.*

Defendant, a corporation engaged in making glass bottles, bought from the plaintiff, a manufacturing company, seventeen large clay pots for use in the glass factory. Plaintiff made the pots from different kinds of clay according to a secret formula and delivered them to the defendant unburnt. The custom of the defendant was to put the clay pots when needed in an arch and there anneal them by subjecting them to an intense heat. They were then transferred to the glass furnace where they were filled with the molten material from which glass is made. No inspection of the pots before being placed in the annealing furnace could reveal any imperfections in their composition. In this case, of the seventeen pots bought by the defendant, eight or nine broke or melted down while being annealed, and four or five of those which had stood the annealing process cracked or broke in the glass furnace, thereby causing a loss of the molten glass they contained as well as doing damage to the furnace. In an action to recover the price of the pots sold the evidence showed that defendant's workmen were skillful and experienced and that the plaintiff knew exactly the use to which the defendant intended to apply the pots. *Held,*

1st. That there was an implied warranty by the plaintiff that the pots were reasonably fit for the purpose to which they were to be applied, since this purpose was known to the plaintiff company and the defendant relied upon its judgment and skill.

2nd. That this implied warranty was not limited to the annealing process but, being co-extensive with the use to which the pots were to be put, applied also to the defects which caused some of them to break while being used in the glass furnace.

In this case the defendant is entitled to recoup against plaintiff's demand for the price of the pots sold, the damage sustained by the breaking of the pots in the glass furnace after being annealed.

Appeal from the Circuit Court for Allegany County (WILLIAMS, J.)

*Defendant's 1st Prayer.*—If the jury find from the evidence that the clay pots sued for, were manufactured and sold by

the plaintiff to the defendant and that at the time of their manufacture and sale the plaintiff knew for what purpose and for what use said pots were so purchased by the defendant and that defendant wanted them for the purpose of first annealing or heating them in its retorts or furnace to be prepared or fitted for use in its glass factory in Cumberland to heat glass in and to retain said molten glass in the usual way of its manufacture of glass articles in said works and shall further find whether said pots were fit for said heating or burning purposes and would stand the heat and be serviceable for said purpose could not be known or discovered by an inspection of said pots and that their said fitness and serviceableness could not be tested in any way before they were put into said retorts and shall further find that in purchasing said pots the defendant trusted to and relied on the plaintiff and its knowledge and skill in the manufacture of the same, then said pots when sold to the defendant were sold upon an implied warranty on the part of the plaintiff that they were fit and serviceable for said uses and purposes, notwithstanding the jury may further find that the plaintiff did not expressly warrant the said pots to be fit and serviceable.   (*Rejected.*)

*Defendant's 3rd Prayer.*—That if the jury find the facts set out in the first prayer and further find that the said pots mentioned in the first prayer were shipped by plaintiff to defendant and received by it, and that thereafter the defendant carefully and in a correct and proper and skillful manner used part of said pots in said factory for the purposes set out in the first prayer, and that a number of them after being used but a short time, proved to be unfit and unserviceable for said purposes and cracked and broke and melted down, thereby spilling the molten glass of defendant therefrom and wasting the same and thereby injuring the eye of the furnace of plaintiff and thereby causing the loss of time of the employees of the defendant for which defendant had to pay them, that the jury can only allow plaintiff in this case so much as the jury may find said pots were worth taking into consideration the condition in which they were when received and as against any such allowance

the jury may find for the plaintiff as aforesaid, the defendant is entitled to recoup such damage (if any), as the jury may find the defendant suffered, because of said loss of its molten glass, the time and labor of its employees and the injury to its furnace, and if the jury shall find that said loss exceeds or is equal to any such sum as they may award the plaintiff as aforesaid for said pots, and the undisputed articles on plaintiff's account, after deducting the admitted payment of $400, then the plaintiff cannot recover in this action, it being admitted that the sale of the undisputed articles only amount to $58.54. (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Benjamin A. Richmond* and *D. Lindley Sloan,* for the appellant.

The jury were plainly told, that the implied warranty that the pots were reasonably fit for use only extended to and meant their use in being *heated* in the *heating retort,* and did not warrant that they were fit for *use* at all, in the *glass furnace,* after being heated in the heating retort. In this way the warranty was cut in two, and made to stop at the *heating furnace,* and not allowed to extend through to the *use* of the pots in the *glass furnace.*

We contend that neither upon reason nor authority can any such application of the warranty in this case be founded. We have been able to find no case, after the most diligent search, which sustains any such doctrine, but on the other hand the cases to the contrary, similar in principle, are numerous and to the point.

In *Ottowa Glass Co.* v. *Gunther,* 31 Fed. Rep. 208, the facts amounted to an express warranty, that the beer bottles sold were "export beer bottles," known in the trade as bottles which had to be heated, before beer was put in them. In that case upon the question of recoupment the Court held that the warranty, that the bottles were export beer bottles,

meant that they were fit for use in the particular beer business in which they were sold, and that they were therefore warranted not only to stand the heating, but to stand the use when beer was put in them after the heating.   In short that the use for which the bottles were guaranteed fit was not merely the preparatory use of heating them, but that the warranty went through to the final use, and warranted that they would hold beer and not break when beer was put in them, after being properly heated.   This case seems to be identical in principle with the one at bar.

In *Downing* v. *Dearborn*, 77 Maine, 457, plaintiffs were manufacturers of leather, defendants were manufacturers of shoes.   Plaintiffs sold leather to defendants to be made into shoes.   Plaintiffs knew that defendants wanted the leather to manufacture into shoes.   The Court held that there was an implied warranty that the leather should prove fit for use, after being made into shoes.   There being an implied warranty that the leather should be reasonably fit for the purposes for which it was bought.   Here again the Court carried the warranty through to the ultimate use, and did not confine its guaranteed fitness to the mere manufacture of the shoes.   The facts of this case make it a much stronger one for the appellant on the line of its contention, than the one at bar.   In the above case there was something else to be done in the manufacture of the leather by the purchaser.   Its character was to be wholly changed and turned into shoes.   The Court decided that as the ultimate use of the things sold, was its wear as shoes, the warranty went through to the ultimate use, and if after they were properly manufactured into shoes, they were unfit to wear as shoes, the warranty was broken.

In *Cochran* v. *Jones*, 65 Ga. 678, the plaintiff sold defendant a threshing machine out of repair, to defendant, who undertook to make the repairs.   Held that there was an implied warranty, that if the repairs were properly made by the defendants, the machine would be reasonably fit for the ultimate use to which it was intended, namely, threshing wheat.

In *Shaw* v. *Smith*, 45 Kans. 334, plaintiff sold defendant

flax seed to sow, the crop raised to be sold to the plaintiff; held by the Court that there was an implied warranty that the seed, being sold for a particular purpose known to both parties, would after planting and proper cultivation yield a crop of flax. Here the Court held that the warranty was not only that the seed was good flax seed, fit to plant in the ground, but that if properly planted and the crop properly cultivated, it would, under ordinary seasons and circumstances, yield flax, thus carrying the warranty through to the ultimate use and purpose.

To the same effect is a similar case *Johnson* v. *Sproul*, 50 Mo. App. 121, where the Court said that if the seed would not, and did not grow, when plaintiff planted and treated it, as good husbandry demanded, then it utterly failed of the purpose for which it was sold. There was on the part of the plaintiff an implied warranty that the seed was of a kind that would grow.

In *Omaha Coal, etc., Co.* v. *Foy*, 37 Neb. 68, lime was sold for the purpose of plastering a building. The seller knew for what purpose the lime was to be used. The plaster made from the lime would not stay on the houses. The Court held that there was an implied warranty that the lime if properly made into plaster would, be reasonably fit for the purpose to which it was to be applied, namely, plastering.

In *Nye & Schneider* v. *Snyder*, 77 N. W. Rep. 118 (Neb.), the same ruling was made in regard to cement sold for plastering; held by the Court that there was a warranty that the cement should be fit for the purpose of plastering, provided that it was skillfully prepared, used and applied by the buyer.

In *Weber* v. *Demuth*, 3 N. Y. S. 658, the plaintiff being a manufacturer of tiles and fire-bricks warranted that the tiles and brick were suitable for the purpose intended. The defendant put them in his furnace in the usual way and after a short use they melted and destroyed the furnace; held by the City Court of New York on appeal that "when a manufacturer agrees to make a thing for a particular purpose there is an implied warranty that it shall be reasonably fit for that pur-

pose. The defects were of a character not readily discover-
able, until after the tiles were used for they were of a latent
nature. The warranty therefore *survived* the *acceptance of the
goods."* (*Italics are ours.*)

All the cases are directly in point to the effect, that where
the facts justify an implied warranty, or where there is an ex-
press warranty, that the thing sold is reasonably fit for the
uses to which it is to be applied, that there the warranty does
not stop at the mere acceptance of the goods or at their mere
fitness for preliminary mixture, manufacture, heating or prepa-
ration, but that the warranty goes through the preliminary
preparation or manufacture, if skillfully done, to the ultimate
use and guarantees that they will be fit for this ultimate use.

In *Gust* v. *Jones*, 32 Grattan, 526, lumber was sold to a to-
bacco grower from which boxes were to be made to hold to-
bacco. The Court held that there was an implied warranty,
not only that the lumber would make boxes, but that the
boxes would be reasonably fit to hold tobacco when made.
The planks turned out to be unfit because they were damp,
and the tobacco moulded in the boxes. See also *Nile* v. *Rog-
ers*, 11 Ohio St. 54; *Savins case*, 38 Vt. 432; *Gautier* v. *Doug-
las*, 13 Hun. 524; *Park* v. *Morris Ax Co.*, 54 N. Y. 592;
*Brown* v. *Eglington*, 40 Eng. Com. Law, 371; *Benjamin on
Sales*, sec. 948; 22 L. R. A. 188, and cases cited.

Any such restriction of the warranty, is contrary to reason
or common justice. It was no part of the main business of
the defendant to heat pots. Their main and principle business
was to make glass or glass bottles. Heating the pots in the
pot arch was of no advantage whatever to the defendant, ex-
cept to prepare them for their use in the glass furnace. What
they wanted the pots for, was not to heat them in the heating
furnace ; that process was of no use to defendant at all.
What the defendant wanted the pots for, was their ultimate
*use* in the glass factory to *hold glass*. That is the use for
which they bought the pots, and when the law requires the
plaintiff to guarantee the thing sold as fit for the use and pur-
pose for which it is wanted, the law must contemplate the ul-

timate use in the furnace, as well as its preparatory use in the heating arch. If this were not so, either an express or an implied warranty would be of very little use to the defendant. It would be a promise made to be kept to the ear and broken to the heart; a warranty that warranted but a fraction where the law and common sense say, it shall warrant the whole.

If our warranty extended, as we contend, clear through to the ultimate use of the pots, in the glass furnace, then the spilling of the glass, damage to the furnace, and so much of the labor as was wasted, on and about the pots that broke in the glass furnace, were damages which directly flowed from a breach of the warranty, and for which we were entitled to recover. *Abbott* v. *Gatch*, 333; *Poe's Pleading*, secs. 615, 616; *Harman* v. *Bannon*, 71 Md. 428; *Dorr* v. *Fisher*, 1 Cush. 271; *Jones* v. *Van Epps*, 22 Wend. 155; *Beall* v. *Pearre*, 12 Md. 550; *Eureka Fert. Co.* v. *Balto.*, 78 Md. 189.

For our right to recoup in such cases generally, for breach of implied warranty, see 11 L. R. A. 682, and cases cited. This right of recoupment, where the damages flow directly out of the contract, or warranty of the things sold, can be asserted by way of evidence, under the general issue plea, without being specially pleaded. *Lee* v. *Rutledge*, 51 Md. 518; *Poe's Pleading*, sec. 616. By the rejection of this third prayer all our evidence in recoupment for the $200 worth of glass spilled by the breaking pots, the damage to our furnace done by the spilled glass, and the loss of the labor connected therewith, was all, of course, cut out of the case, and the warranty being confined to the fitness of the pots, to be heated in the heating arch, when received by the defendant, left us little or no ground to stand upon. We were thus, by the granting of the plaintiff's prayer, by the rejection of our three prayers, and the substitution of the Court's two prayers, virtually deprived of our whole defense.

*J. W. Scott Cochrane*, for the appellee.

The contention of the appellant was that agreeable to the rule of law adopted by this Court in *Rice* v. *Forcyth*, 41 Md.

403, the appellee impliedly warranted the pots as reasonably fit for the purpose intended, viz: To melt glass in, while the appellee contended that there was no warranty whatever, that the product was so precarious, or in other words that as an unburnt brick was so easily broken, from all sorts of causes, that appellee always allowed the trade a discount in lieu of guaranty and appellee's responsibility ended when the product was shipped and that such allowance was made in their case. It is true that this evidence was rebutted to some extent by the evidence of the manager of the Glass Company, who said that this allowance was in lieu of breakage by railroad in shipping—testimony which upon this point amounts to very little since the railroad company would be responsible to the Glass Company for breakage while the goods were in transit, and appellee would not likely make a rule to allow and pay for such breakage in all cases whether it actually occurred or not. But it was learned in progress of the trial that the Court held to the view as expressed in case above referred to that there was an implied warranty that the clay pots were reasonably fit for the purpose intended, and the case was presented to the Court by the prayers upon that theory.

When the prayers were presented to the Court it was seen that though the rule is simple enough when applied to a vendor when said vendor was the sole manufacturer of the article sold, but became very difficult when applied to a case where the vendor and vendee were both concerned in the manufacture of the thing sold, as in this case, as by the evidence of defendant's own witness Biser, the delicate and difficult part of the manufacture of the article was left to Glass Company in the annealing process and not with the Clay Pot Company at all. And while it was held by the Court that there was an implied warranty that the pots were reasonably fit for the purpose intended still it was manifest that the warranty could not extend to any portion of the process of manufacture of the articles which belonged to appellant, and in which the Clay Pot Company was in no way responsible. In other words if defendant company by lack of skill or negligence imperfectly

did the annealing or handling whereby the pots became worth-less and broke, clearly it would be most unjust that the Clay Pot Company should be held accountable as they could of course have no control over the work of the Glass Company. The three prayers of appellant make this implied warranty extend not only to the work of Clay Pot Company but to whole of the manufacture of the pots, to the work of the Glass Company as well as that of its own, and would have been clearly erroneous and misleading.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was brought by the Pittsburg Clay Pot Company, a body corporate, against the Queen City Glass Company, also a corporation, to recover the price of seventeen clay pots sold by the former to the latter. The declaration contains the usual money counts. A plea denying the right of the Pittsburg Company to sue in the Courts of this State, because of its fail-ure to comply with the provisions of *ch. 270* of the *Acts of Assembly of 1898* was put in, which later on appears to have been demurred to; whereupon, under lea vo ained, amended pleas of never promised, never indebted and payment were filed. The case then went to trial before a jury and resulted in a verdict for the plaintiff, the Pittsburg Company, upon which verdict a judgment was entered and from that judgment this appeal was taken. There is but one bill of exceptions in the case and that brings up for review the rulings on the prayers for instructions to the jury.

The Clay Pot Company is engaged in the manufacture of clay pots for use in glass factories. The Queen City Glass Company carries on the busines of making glass bottles. In the prosecution of that business clay pots about five feet high, four feet wide, with walls four inches thick, are used to melt and hold the materials of which glass is composed. The clay pots when shipped from the establishment where they are made are unburnt. When needed for use by the glass factory they are placed in what is called a pot arch and subjected to an intense heat reaching two thousand degrees, and are kept there

for several days.   This process is called annealing.   When annealed the pots are quickly transferred from the pot arch to the glass furnace where they are filled with the materials out of which glass is made, and those materials are brought by the heat to a molten state, so that the glass blowers may fashion and shape the glass into bottles.   In the process of annealing, some eight or nine of the seventeen pots, for the price of which this suit was brought, cracked, broke, warped, bulged or melted down and flattened out in the pot arch and thus were rendered useless; whilst four or five of them, which had stood the annealing, cracked and broke in the glass furnace after two or three fillings and the remainder lasted a much shorter time than such pots should be serviceable.  .It was shown in evidence that when the pots broke in the glass furnace the molten · glass which they contained was spilled and wasted, causing a loss of two hundred dollars, and the molten material ran down into the eye of the furnace, cut the grate-bars and damaged the furnace to such an extent as to necessitate the expenditure of one  hundred and  fifty dollars for repairs.   It was further shown that the employees of the Glass Company were skillful and competent and  that they had  used  care in annealing the pots.   It was proven that the pots were made of clay brought from  Germany, Missouri, Kentucky, Pennsylvania and  other places and that other ingredients were used in mixing the clay according to a secret formula known to the Pittsburg Company. In the nature of the case therefore it was impossible for the purchaser to discover any defects in the pots before they were placed  in the annealing  furnace, because  no  inspection could reveal any imperfections in their make up or in the composition of the material of which they were constructed.   The evidence further showed that inasmuch as nothing could be discovered by inspection, about the quality of the pots or as to their fitness for the use for which they were intended, the Glass Company was compelled to trust to and rely upon the manufacture and  the manufacturer for their quality and fitness; and that the Pittsburg  Company knew exactly to what use the Glass Company intended to apply them and what treatment in heat-

ing them would be necessary to put them in condition for use in the glass furnace. On the account rendered and upon which the suit is founded there is a credit of five per cent allowed as a discount "in lieu of guarantee;" but this entry was explained by one of the witnesses to mean "merely a deduction for guaranty against breakage in transit and not in satisfaction of any breakage of the pots in the pot arch or furnaces."

At the conclusion of the evidence the plaintiff presented one prayer and the defendant three for instructions to the jury. The plaintiff's prayer was granted, but those of the defendant were rejected and in their stead the trial Court gave two instructions of its own. Those are the rulings of which error is predicated.

The prayer granted at the instance of the plaintiff, the appellee in this Court, proceeded upon the theory that if there was an express or implied warranty on the part of the vendor it was a warranty that the "pots were reasonably fit for the purpose of being heated in" the "retort or annealing furnace to be prepared for use in the melting of glass." The defendant's *first* prayer after setting forth hypothetically the facts substantially as we have narrated them, concluded with the legal proposition, deducible therefrom, that "said pots when sold to the defendant were sold upon an implied warranty on the part of the plaintiff that they were fit and serviceable for," first, annealing or heating in the retorts, and, secondly, for heating and for retaining molten glass in the usual way of the manufacture of glass articles in the defendant's works. The difference between the two prayers lies in this: By the plaintiff's the warranty extended no further than the annealing of the pots and did not cover their use in the glass furnace; whilst by the defendant's first prayer the warranty included both of the uses for which the pots were intended and were furnished, viz., annealing and capacity or ability to hold the molten glass. Upon these two prayers two questions arise and they are: First, Was there a warranty? Secondly. If there was, what is its scope and extent?

First: There is no pretense that there was an express war-

ranty.  Does an implied warranty arise by operation of law out of the circumstances of the case?  We need not go far-ther than the Maryland Reports to find an answer to that question.  In *Rice* v. *Forsyth*, 41 Md. 403, this Court adopted aud approved the proposition laid down in *Jones* v. *Just*, L. R. 3 Q. B. 197, as follows: "Where a manufacturer contracts to supply an article which he manufactures to be applied to a particular purpose so that the buyer necessarily trusts to the judgment or skill of the manufacturer, there is in that case an implied term or warranty, that it shall be reasonably fit for the purpose to which it is to be applied.  In such a case the buyer trusts to the manufacturer or dealer and relies upon his judg-ment and not upon his own."  See *Osgood* v. *Lewis*, 2 H. & G. 524; 1 *Parsons on Cont.*, 468; *Johnson* v. *Cope*, 3 H. & J. 89; *Hyatt* v. *Boyle*, 5 G. & J. 110; *Gunther and Rodewald* v. *Atwell*, 19 Md. 157; *Wheat* v. *Cross*, 31 Md. 99.

We think it is quite clear that the proposition just quoted is applicable.  The evidence already referred to, if credited by the jury, demonstrates that the purchaser was compelled to rely on the skill and judgment of the manufacturer.  The pots were formed of several species of clay.  The clays were mixed according to a secret formula and they were made into form and shape by hand, the process involving the addition of suc-cessive layers of the material.  It was impossible for the pur-chaser to know by an inspection or otherwise whether the various component elements had all been used, or if used whether they had been used in proper proportions; or whether they had been skillfully manipulated; or whether the formula had been observed.  Actual use of the pots was the sole method by which a defect could be discovered.  They were manu-factured for a special purpose which was known to the ven-dor, and the vendee was bound to trust to the manufacturer and to rely on his judgment.  There could not well be a con-dition of circumstances more obviously within the doctrine of implied warranty.

Secondly: What is the scope and extent of the implied war-ranty?  The instruction given at the instance of the Pittsburg

Company, limited the warranty to the annealing process; whilst the rejected first prayer of the Glass Company extended the warranty to the use of the clay pots in the glass furnace. If there was a warranty at all, upon what principle can it be said that it has been fulfilled or complied with if the thing warranted to be fit for a designated use, disintegrates or breaks down either before it has been put to that use or in the very act of being used for the purpose for which it was designed? The clay pots were purchased to be used in the manufacture of glass bottles. Their ultimate use was, therefore, in the glass furnace. The annealing process was merely preliminary to their final use. Without being annealed they were of no value to the purchaser. After being properly annealed they were in a condition to be used in the glass furnace provided they were free from inherent and hidden defects, and if when thus used they cracked and permitted the molten glass to escape, they obviously were unfit for the purpose to which they were to be applied and for which they had been manufactured and had been bought. It cannot be said that they were bought merely to be annealed, because both vendor and vendee knew perfectly well their real use was to hold in a fused state and at a high temperature the materials composing the glass. An implied warranty arising as this one did, to be a warranty at all must be co-extensive with the use to which the thing warranted is intended to be put; and the use to which the clay pots were designed to be put, as previously stated, was the melting of glass in the glass furnace, and not the mere annealing of the pots; and this both buyer and seller fully understood. Many cases have been referred to on the brief of the appellant to illustrate this view, but it is not deemed necessary to do more than name them, or rather some of them, without quoting from them. *Cochran* v. *Jones*, 65 Ga. 678; *Shaw* v. *Smith*, 45 Kans. 334; *Omaha Coal C. & L. Co.* v. *Fay*, 37 Neb. 68; and the copious notes to *McQuaid* v. *Rose et al.*, 22 L. R. A. 187.

According to the conclusion just stated there was error in granting the appellee's instruction and in rejecting the appel-

lant's *first* prayer.   The appellant's *second* prayer includes but part of the ground covered by the first.   The granting of the *first* would render the *second* unnecessary.

The appellant's *third* prayer relates to recoupment.   Upon the assumption that the warranty extended to the clay pots in the glass furnace after they had been annealed in the retorts, the purchaser, the Glass Company, was entitled to recoup against the vendor's claim the amount of damages sustained by the vendee in consequence of a breach of the warranty. *Crook, Horner & Co.* v. *B. & O. R. R. Co.*, 80 Md. 338; *Harman* v. *Bannon*, 71 Md. 424.   The *third* prayer should, therefore, have been granted.

The instructions given by the Court in lieu of the defendant's *first* and *second* prayers were at variance with the first of those two prayers, and for the reasons which have induced us to hold that the defendant's *first* prayer should have been granted, the instructions given by the Court ought not to have been given.   Because of the errors indicated, that is to say, because of the granting of the plaintiff's prayer, the rejection of the defendant's *first* and *third* prayers and the granting of the Court's two instructions, the judgment must be reversed and a new trial will be awarded.

*Judgment reversed with costs above and below and new trial awarded.*

(Decided June 30th, 1903.)