STANDARD PACKAGING COR-
PORATION

v.

CONTINENTAL DISTILLING CORPO-
RATION, Appellant.

No. 16390.

United States Court of Appeals
Third Circuit.

Argued April 20, 1967.

Decided May 17, 1967.

Robert J. Spiegel, Philadelphia, Pa., for appellant.

Edwin B. Barnett, Philadelphia, Pa., (Strong, Barnett & Grasberger, Philadelphia, Pa., on the brief), for appellee.

Before SMITH and FREEDMAN, Circuit Judges, and WORTENDYKE, District Judge.

## OPINION OF THE COURT

WORTENDYKE, District Judge.

This is a seller's action against the buyer upon a book account for balance of price of goods sold and delivered, consisting of holiday boxes and bands for packaging individual liquor bottles. Jurisdiction is predicated upon the conceded diversity of citizenship of the parties and the minimum required amount involved.

Defendant buyer counterclaimed for the difference between the unpaid balance of the price and the amount of expenses incurred by the buyer in efforts to bring the goods sold into the condition of suitability for the purpose alleged to have been intended by the buyer and known to the seller when ordered. The buyer appeals from a judgment for $13,158.59 entered upon a directed verdict for the seller and against the buyer upon its counterclaim.

Error is assigned upon appellant's contention that the evidence presented a jury question respecting the alleged breach of seller's implied warranty of

the fitness of the goods sold for the particular purpose intended by the buyer and disclosed to the seller. Reliance for support of this contention is placed upon Section 2–315 of the Pennsylvania Uniform Commercial Code, as amended 1959, Oct. 2, P.L. 1023, § 1, 12A P.S. 1–105. That section reads as follows:

> **"2–315. Implied Warranty; Fitness for Particular Purpose**
>
> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

Seller's case consisted of the invoices reflecting the sales and deliveries of the merchandise and of the reading into the record of written admissions by the buyer that (1) "plaintiff sold and delivered to defendant holiday boxes and bands for packaging liquor bottles and performed services in connection therewith in accordance with the invoices—;" (2) "the aggregate price to be paid by defendant as agreed between the parties for said boxes was $10,369.25;" (3) "defendant did not make any payments on account which have been accepted by plaintiff;" (4) "plaintiff did not sell nor was it consulted nor did it give defendant any advice on the type of or dimensions of the reshipper or reshipper cells to be used in connection with said gift boxes." Upon the presentation of the foregoing proofs, seller rested its case.

The evidence for the buyer has been comprehensively and accurately summarized by the trial judge in his opinion and order, dated November 2, 1966, denying appellant's motion for a new trial. So much of his opinion as we deem necessary for our decision will be found in the following excerpts from that summary.

"There is no dispute as to the price agreed upon by the parties ($10,369.-25) or as to the specifications of the goods which were ordered and delivered. The goods consisted of thousands of individual 'holiday' boxes into each of which defendant was to place a bottle of its whiskey. Pursuant to defendant's purchase order, the individual boxes were circled by an acetate band, on which appeared certain information pertaining to the liquor as required by law. The idea was that this band could be easily removed by the ultimate purchaser so that the box would be free of commercial labeling when presented to the recipient as a gift. Each case was prepared for the reception of the ten or twelve boxes by the insertion of 'cells' which served as compartments for each package.

The insertion of the bottles into the boxes presented no difficulty. Unfortunately, though, when defendant's packers began to insert the individual boxes into the cells of the shipping case, many, if not most, of the acetate bands either ripped or were otherwise damaged. Since the goods could could not be shipped in this condition, defendant expended additional time, effort, and money in devising a solution of its problem. The solution, which was largely but not entirely successful, consisted of (1) enlarging the size of the cells in the shipping case in an attempt to accomodate the larger bulk of the holiday package, and (2) the insertion of the holiday boxes into glassine bags before they were placed in the shipping cells so as to reduce contact between the bands and the cell sides.

The defendant's usual year-round practice was to ship liquor bottles in compartmentalized cases without any wrapping or box. It was only during the holiday season that the bottles were first placed in special 'gift packages,' whose design was approved by defendant (and, in this case, executed by

plaintiff), and then the boxes were inserted in the shipping cells. Defendant knew that the cells would have to be enlarged to contain the special boxes, and accordingly they were enlarged even before the difficulties with the acetate bands developed.

After the acetate bands began to tear, the cells were again enlarged, but the overall shipping-case being of finite dimensions, unlimited further enlargement would have been impossible. Furthermore, defendant's witness Boddorff testified that the cells could not be too large, else there would be danger of breakage. However, it was not until after the holiday boxes had been preliminarily inserted into the glassine bags that the difficulty was in any material way remedied."

\* \* \* \* \* \*

"A sample of the containers and acetate band manufactured by plaintiff had been submitted to defendant in advance of actual production. After certain modifications, the styles were approved by defendant, the items were manufactured, and they were delivered to defendant, which used the boxes for the very purpose for which they were intended. Every specification was, so far as the record reveals, fully complied with. It was only when the boxes were inserted into the re-shipping cells that difficulty ensued. The boxes as such were unquestionably merchantable."

\* \* \* \* \* \*

"As to the acetate band, \* \* \* [there was] no evidence whatsoever to sustain defendant's contention that it was in any way unmerchantable. It did what it was supposed to do: it circled the package and contained the appropriate wording. It was torn and mutilated only when an attempt was made to insert the package into the re-shipping cells."

\* \* \* \* \* \*

"\* \* \* the goods were required for the sole purpose [of containing] \* \* the liquor bottles. The acetate band merely went around the package." \* \* \* "It was not the *purpose* of the holiday box or the acetate band which surrounded it to be of such dimensions, material, and character that it would fit nicely into re-shipping cells; this was merely a step in the production process."

\* \* \* \* \* \*

"\* \* \* the bands 'worked' perfectly well until the boxes were thrust into the shipping cells, at which point they ripped. \* \* \* There is simply no evidence that the bands were defective. They did not break in midair while they were being lowered into the cases; they broke only when they came in direct contact with the inadequate shipping cases which plaintiff did not manufacture and of whose dimensions plaintiff had no idea."

\* \* \* \* \* \*

"So far as plaintiff was concerned, the purpose of the boxes was to package liquor bottles attractively. The acetate band served the utilitarian purpose of giving notice required by law on the front of the package. It was supposed to be easily removable by the ultimate purchaser, and it was. It conformed exactly to the specifications of defendant and was in no way deficient in materials or workmanship. The *only* explanation in the evidence for what happened is that the shipping cases, ordinarily adequate for year-round liquor packaging, were too small for the elegant holiday boxes approved, ordered and received by defendant."

Appellant buyer takes issue with the trial court's statement that the "sole" purpose for which the goods were required was "to contain the liquor bottles". Buyer argues that "the purpose of the 'package' (with band as suggested by defendant) was to contain the bottle *and* deliver it to the consumer in a marketable and usable condition. Both of these purposes, as well as the method of delivery, were known to plaintiff." Assum-

ing the duality urged against the singleness of purpose stated by the Court, the evidence summarized does not for that reason render the direction of a verdict for the plaintiff erroneous. The assumption only strengthens the negation of breach of warranty.

■ Appellant argues that the buyer did not order a specific item by description because the purchase order "placed by defendant was virtually lifted verbatim from plaintiff's quotations * * *, the use of the band was plaintiff's idea from the outset * * * and * * * the specific use of a '100 acetate band' was wholly plaintiff's recommendation." The record belies the assertion that the use of a removable band around the individual bottle box was the seller's idea. The trial court therefore was correct in following the Pennsylvania rule that " * * * where a specific item is ordered and that item as delivered fits the description called for by the buyer, there is no breach of warranty when the contemplated use of the goods proves inappropriate to their inherent capabilities and design." Defendant formally admitted that "plaintiff did not sell nor was it consulted nor did it give defendant any advice on the type of or dimensions of the reshipper or re-shipper cells to be used in connection with said gift boxes." Plaintiff's price quotations to defendant of May 19, 1961 did not include acetate bands. Seller's letter to buyer of June 15, 1961, referring to a telephone conversation between their respective representatives, stated in part: "With regard to using an acetate band we would anticipate using 100 gauge acetate, four inches wide, and printed three colors either by flexography or gravure. If you chose flexography, plates for three-color printing should cost no more than $175.00 including necessary art. * * * However, a final quotation will have to await our inspection of the design." Seller submitted a proof of acetate design to buyer on July 3, 1961, but in its letter of July 5 buyer advised the seller of three required changes in the acetate band layout. Accordingly, on July 19 seller quoted to buyer the cost of 100 gauge bands—"size 4½ X 14¼—to be applied to the carton prices quoted July 18, on which the cost of applying these bands was included." With its letter of July 26 buyer supplied "copy for mandatory to appear on the back portion of the acetate band—'Straight Bourbon Whiskey 6 Years Old 86 Proof ⅘ Quart Bottled by Old Hickory Distillers Co., Phila., Pa.';" directing that "this copy is to be set in 8 point alternate Gothic No. 1," advising that "this same copy may require more space within the oval;" and requesting enlargement if necessary. Seller thereupon quoted the boxes at $58.88 per M and the acetate bands at $13.83 per M. In further samples submitted by the seller, the buyer required substantial corrections on August 7, 1961. Final approval of the revised plain box sample for size was given by the buyer on August 17, and shipments commenced early the following month in accordance with purchase orders containing specifications taken from seller's quotations. No complete carton with acetate band attached had been received by the buyer prior to the initial bulk shipments of the merchandise.

When the buyer commenced to use the merchandise it was found that the acetate bands were tearing when the box was put into the cell of the re-shipper. The bands would "catch on the cells or even without contact they would split as they went in. * * * As the box was dropped into the cell [by hand] this band would tear. * * * On occasion it would catch and on other occasions it would drop in and it would split as it dropped."

The buyer attempted to prevent the splitting and tearing of the bands by enlarging the size of the cells in the shipping carton, and by placing the individual bottle boxes in glassine bags before dropping the boxes into the cells. The buyer incurred an expense for these bags amounting to $2,389.50. However, the use of the bags proved unsatisfactory.

The evidence disclosed that the gauge of the bands was not specified by the buyer, but that the seller was informed that the individual bottle boxes would have to be inserted in the cells. Upon this evidence appellant argues that the buyer relied upon the seller's "knowledge and experience as a manufacturer of packages for the purpose of selecting the gauge or quality of the acetate band for the use intended" by the buyer and known to the seller, "i. e. ultimate delivery to a customer via bulk shipments in cases adequately insulated against breakage." The material, dimensions and design of the bands was in accordance with the buyer's order. The evidence is barren of any basis for inference that the catching, tearing or splitting of the bands was caused by any defect or impropriety in their material, dimensions or design, nor in the legend imprinted thereon. It was the buyer which required that each holiday gift box in which an individual bottle of its liquor would be contained should be exteriorly encircled by an acetate band bearing legally required information pertaining to the liquor in the bottle, and which could be easily removed by the ultimate purchaser when the boxed bottle was to be presented as a gift. By placing the required information upon the removable band the necessity for imprinting the information upon a commercial label adherent to the gift box itself was obviated.

There was no evidence supportive of an inference that the gift boxes were unfit for the ordinary purpose for which they were intended to be used. The trial court correctly found that the bands "circled the package and contained the appropriate wording" and were "torn and mutilated only when an attempt was made to insert the package into the re-shipping cells." There was no evidence that the dimensions of the cells were disclosed to the seller. Upon these uncontradicted facts there was no basis in the evidence for a jury finding that the seller breached an implied warranty of the fitness of the bands alone or in conjunction with the boxes. The evidence was insufficient to justify a finding that the seller had reason to know that the banded goods were required for the particular purpose of facilitating their insertion into the cells of the shipping case of undisclosed dimensions, and that the buyer relied on the seller's skill or judgment to select or furnish suitable goods for that purpose. See Uniform Commercial Code, 12A P.S. § 2–315. Royal Pioneer P. B. Mfg. Co. v. Louis DeJonge & Co., 179 Pa.Super. 155 115 A.2d 837 (1955); and Queen City Glass Co. v. Pittsburg Clay Pot Co., 97 Md. 429, 55 A. 447 (1903) relied upon by the appellant here, although involving breaches of implied warranty between a manufacturer-seller and a buyer are distinguishable from the present case. *Royal Pioneer* affirmed a judgment upon a jury verdict for a breach of implied warranty by a manufacturer of paper for covering Christmas boxes for Lord & Taylor. In that case the seller had knowledge of the purpose for which the paper was sold, and that it was required to be of the same quality as that used in the previous year's contract between the parties. The buyer had specified the type and color of the paper but not the quality. The paper curled, wrinkled, blistered and tore, and jammed the buyer's box-making machine. The jury's finding of an implied warranty as to the quality was held to find support in evidence that the buyer relied upon the seller's skill and judgment, and that the seller had knowledge of the purpose for which the paper was to be used. Although, in the case at bar, there may have been an evidentiary basis for a jury finding that the buyer contemplated shipping the boxed and banded bottles in a multi-unit container provided with appropriate means to prevent or minimize breakage of the bottle, there was no evidence that the seller was made aware of the method by which the boxes were to be inserted in the cells, nor of the dimensions of the cells for the reception of the banded individual boxes. In *Queen City* the action was for the recovery of the price of clay pots sold by the plaintiff to the defendant for use by

the latter in making glass bottles. When needed for use by the glassmaker, the pots are subjected to intense heat for a protracted period. This process is called "annealing". After annealing, the pots are transferred to the glass furnace where they are filled with materials out of which the glass is made. Those materials are in a molten state. During the annealing of the pots, some of them cracked, broke, warped, bulged or melted down and were rendered useless causing the loss of the molten glass which they contained. It was impossible for the purchaser to discover any defects in the pots before they were placed in the annealing furnace. The purchaser therefore was compelled to rely upon the manufacturer of the pots for the determination of their fitness for the use for which they were intended, which was known to the seller. Judgment for the seller of pots for the price was reversed. The Maryland Court of Appeals held that upon the evidence there was implied warranty by the manufacturer of the pots. At page 449 of 55 A. the Court stated:

"An implied warranty, arising as this one did, to be a warranty at all, must be coextensive with the use to which the thing warranted [clay pots] * * were designed to be put; [and that use] * * * was the melting of glass in the glass furnace, and not the mere annealing of the pots; and this both buyer and seller fully understood."

In the case at bar the seller undertook to manufacture individual gift boxes as wrappers for individual bottles of the buyer's liquor and to surround each box with a band, imprinted with statutorily required information respecting the liquor, which was readily removable by the donor of the packaged bottle when used as a holiday gift. The seller here did not impliedly warrant that the banded gift box would fit into a cell of the buyer's multi-unit shipping carton of undisclosed dimensions.

Accordingly, the judgment of the court below will be affirmed.