Centennial Ins. Co. of New York et al. *v.* Vic Tanny
International of Toledo, Inc., Appellant; Cricket
Health Clubs of America, Inc. et al., Appellees.

138

(No. 7718—Decided January 20, 1975.)

Mr. R. B. Swartzbaugh, for plaintiffs.

Messrs. Cobourn, Smith, Rohrbacher & Gibson, for defendant-appellant.

Mr. George Royer, for third party defendants appellees.

BROWN, J. This appeal is by Vic Tanny International of Toledo, Inc., the defendant and third-party plaintiff, from a summary judgment rendered by the Court of Common Pleas of Lucas County in favor of the third party defendants, Cricket Health Clubs of America, Inc., and James W. Balough, the appellees. For brevity, Vic Tanny International of Toledo, Inc., will be referred to as Vic Tanny, and Cricket Health Clubs of America, Inc., will be called Cricket.

Plaintiffs are ten insurance companies claiming subrogation rights of insured tenants and two tenants in the Cricket West Shopping Center, Toledo, Ohio, who sued Vic Tanny for damages arising out of a fire loss which occurred December 6, 1970, when a fire damaged the westerly two-fifths of Cricket West Shopping Center. Vic Tanny operated a health club studio on these premises where the fire allegedly originated. The claims of these twelve plaintiffs are not involved in this appeal.

The twelve plaintiffs contended that a defective condition, design, operation or installation of a heater in a sauna bathroom in the Vic Tanny studio caused the fire and consequent fire losses. The record for summary judgment reveals the following facts. On October 7, 1970, two months before the fire, Vic Tanny, formerly known as Holiday Health Spa of Toledo, Inc., purchased the business and all the assets of Cricket. Cricket executed a bill of sale con-

veying to Vic Tanny "the said personal property described in attachment A" and this included "one sauna heater and room." ..

Vic Tanny's Third-Party Complaint against Cricket and Balough alleges that both defendants expressly and impliedly warranted that the sauna room and heater conveyed by the bill of sale were safe and fit for the use for which they were intended. They also represented that the premises had been inspected and were free from fire hazard; that if the third party plaintiff Vic Tanny proved that the cause of the fire was the defective design or installation of the heater and/or the sauna room this was a breach of the express and implied warranties; and that if the sauna or the heater was defective, such defects were latent and undiscoverable by Vic Tanny and were known or should have been known by Cricket and Balough. Vic Tanny predicated liability for any damages upon the alleged breach of express and implied warranties by the two defendants.

Balough was a majority stock holder and president of Cricket, participated in the management and operation of the health club for Cricket, individually purchased the health club business and equipment in controversy on May 13, 1969, and negotiated and consummated the sale of the premises and equipment to Vic Tanny. Vic Tanny contended and produced evidentiary matter in support thereof that prior to the sale on October 6, 1970, to Vic Tanny, Balough negotiated the sale of the assets and the equipment with Vic Tanny without prior authorization of Cricket's board of directors or shareholders.

Balough's motion for summary judgment relies solely on his sixth defense in the answer—namely, that Balough was not responsible for the corporate obligations of defendant Cricket. Balough argues that he consummated the sale of the sauna heater and other equipment as president of Cricket for and on behalf of the corporation, and was not acting individually or personally.

Cricket's motion for a summary judgment relies on the fourth defense of its Answer, that it sold its facilities, which included the sauna heater and room on an "as is"

basis with no warranties except as to liens.

Before considering the validity of the summary judgment in favor of Cricket and Balough, we should keep in mind that we are determining whether the record for review contains a "genuine issue of material fact," within the meaning of Civ. R. 56. If there is such a genuine issue of material fact, Cricket and Balough are not entitled to summary judgment. We are not confronted with the record of a trial on the merits and an appellate inquiry into whether the evidence supports a final judgment for the third party defendants on the issues raised by the Vic Tanny Third-Party Complaint and the responsive answers of the third-party defendants.

Balough's reliance on his sixth defense as a basis for a summary judgment in his favor is predicated upon his argument that Vic Tanny's transaction resulting in the purchase of the sauna heater and other assets was only with Cricket as a corporation and not with Balough individually. However, there is a genuine issue of material fact whether or not Vic Tanny made the purchase from Cricket or from Balough individually. The present record reveals that Balough individually bought the sauna heater and assets on May 13, 1969, before Cricket was incorporated on May 23. 1969, and there was no evidence that Balough ever, as an individual, conveyed the sauna heater and assets to the Cricket Corporation. Negotiations for the sale to Vic Tanny were made by Balough without prior authorization of the Cricket board of directors. Balough's answers to interrogatories further support the contention that there is an issue whether Balough in the sale and dealings with Vic Tanny was acting for himself personally and individually or on behalf of the Cricket Corporation, as an agent or officer. R. C. 1701.76; *Auglaize Box Board Co.* v. *Hinton,* 100 Ohio St. 505; *Knight* v. *Burns,* 22 Ohio App. 482; 13 Ohio Jurisprudence 2d 294, Corporations, Section 825; 1 Fletcher, Cyclopedia Corporation 171, Section 41.1; 1 O'Neal, Close Corporations, Section 1.10; cf. *State, ex rel. Watson,* v. *Standard Oil Co.,* 49 Ohio St. 137; cf. 58 A. L. R. 2d. 784.

It follows that if the sale of the sauna heater and other

assets was made by Balough individually, and not on behalf of the corporation, he is answerable individually for any breach of warranty extended by him to Vic Tanny, or for any fraud committed by him. *Trust Co.* v. *Floyd*, 47 Ohio St. 525; 12 Ohio Jurisprudence 2d 658, Corporations, Section 532. There is a genuine issue of material fact concerning such individual activity and responsibility of Balough to Vic Tanny for breach of warranty or for fraud.

However, if Balough was not acting solely in his individual capacity but was acting solely as an officer and agent of Cricket Corporation, then the question arises: what is Balough's liability personally for breach of warranty or for fraud committed by the corporation upon Vic Tanny? The answer is that Balough is personally liable to Vic Tanny if fraud is proven. Directors and corporate officers generally may be personally liable for fraud even though the corporation may be liable also. *Bartholomew* v. *Bentley*, 15 Ohio 659; *Merchant's National Bank* v. *Thoms*, 11 Ohio Dec. Rep. 632; *State* v. *Stemen*, 90 Ohio App. 309; 12 Ohio Jurisprudence 2d 669, Corporations, Sections 545, 546. To fasten personal liability upon a corporate officer for fraud, it must be shown that he knew the statement was false, that he intended it to be acted upon by the parties seeking redress, and that it was acted upon to the injury of the party. We are not prepared to say that the proof that might be submitted at the trial on the merits will constitute fraud as it is generally defined. The allegations of the pleadings and the evidentiary material in the record filed pursuant to Civ. R. 56 raises a genuine issue of material fact concerning fraud.

Balough had no personal liability solely by virtue of his position as president for breach of warranty committed by the corporation. A warranty is distinguishable from fraud. The element of scienter and intent are essential to constitute fraud, but need not be present in the case of warranty. *Irwin* v. *Wilson*, 45 Ohio St. 426; *Mergenthaler* v. *Dorman*, 36 Ohio Law Rptr. 241; 48 Ohio Jurisprudence 2d 247, 461, 481, Sales, Sections 121, 219, 227; 77 Corpus Juris Secundum 1115, 1117, 1120, Sales, Sections 301, 302, 304.

An officer of a corporation is not personally liable on contracts or on expressed or implied warranties, for which his corporate principal is liable, unless he intentionally or inadvertently binds himself as an individual. Whether or not he is so bound, unless expressly stated, depends upon the intent of the parties. *Aungst v. Creque,* 72 Ohio St. 551; R. C. 1303.39; 12 Ohio Jurisprudence 2d 652-656, Corporations, Sections 529, 530, 532; 77 Corpus Juris Secundum 1121, Sales, Section 305.

The summary judgment in favor of Cricket is based solely on the fourth defense contained in its answer; namely, it sold its facilities which included the sauna heater as used equipment on an "as is" basis with no warranties expressed or implied, except warranties applying to liens. These bare allegations of Cricket's answer are supported by no evidentiary matters in the record, as prescribed by Civ. R. 56, to support the defense that the sale was to be "as is" and without warranties. The bill of sale attached as exhibit A to Balough's motion says nothing about the sale "as is" or that the goods sold were used goods, and contains nothing negativing an intent to make warranties express or implied.

R. C. 1302.29 provides the sole means of excluding warranties, as follows:

"(A) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of section 1302.05 of the Revised Code on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable.

"(B) Subject to division (C) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and *to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.* Language to exclude all implied warranties of fitness is sufficient if it states for example, that 'There are no warranties which extend beyond the description of the face hereof.'

"(C) Notwithstanding division (B) of this section:

"(1) unless the circumstances indicate otherwise all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty * * *." (Emphasis added.)

Also, R. C. 1302.05 provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented * * *

"(B) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Cricket also argues that there was no liability for breach of warranty because the sauna heater was a part of the real estate, not personal property, and therefore not governed by the uniform commercial code. This position of Cricket is untenable for the following reasons.

The record contains no evidentiary material indicating an intent to make the sauna heater a fixture constituting a permanent accession to the real estate. Personal property or "goods" such as a sauna heater within the meaning of R. C. 1302.01(A)(8) has its nature and legal qualities changed into those of a fixture constituting permanent accession to the real estate where an intention to make the article a permanent accession to the realty affirmatively and plainly appears, and if such intention is left in doubt or uncertainty, the legal qualities of the article are not changed, and it remains personal property or "goods." *Teaff* v. *Hewitt*, 1 Ohio St. 511; *Long* v. *White*, 42 Ohio St. 59; *Zangerle* v. *Republic Steel Corp.*, 144 Ohio St. 529; 24 Ohio Jurisprudence 2d 350, Fixtures, Section 6. Therefore, the sauna heater remained personal property or goods as described in the bill of sale.

This conclusion is further supported by R. C. 1302.01 (A)(8), defining "goods";

" 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action."

One of Vic Tanny's claims for relief is based upon an implied warranty of fitness, as provided by R. C. 1302.28, as follows:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 1302.29 of the Revised Code an implied warranty that the goods shall be fit for such purpose."

This statutory implied warranty provision is applicable to used goods such as the sauna heater in this case. *Marmet Coal Co.* v. *People's Coal Co.*, 226 F. 646; *Standard Brands, Inc.*, v. *Consolidated Badger Cooperative* (E. D. Wis.), 89 F. Supp. 5. The record here contains pleadings and facts creating a "genuine issue of material fact" whether or not Cricket and Balough breached the implied warranty of fitness for a particular purpose under R. C. 1302.28.

At this juncture of the record, whether Balough or Cricket are merchants within the meaning of R. C. 1302.01(A)(5) and 1302.27(A) depends upon further evidence, and whether the implied warranty of merchantability under R. C. 1302.27(A) is applicable must be determined at trial. On complex factual and legal issues such as this, the vehicle of a motion for summary judgment is not the proper one for such determination.

Vic Tanny also grounded its claim for recovery on express warranties given by Balough and Cricket that the sauna room and sauna heater were safe and fit for the use for which they were intended, that the premises had been inspected for fire hazards and were free from the same, and that neither the sauna room nor sauna heater were de-

fectively designed or installed. This right to recover for breach of express warranties is based upon R. C. 1302.26, which provides:

"(A) Express warranties by the seller are created as follows:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(B) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

Balough and Cricket contend that the issue of a breach of express warranty could not be raised in this case because such express warranties were not part of the written agreement or bill of sale by which Balough and Cricket conveyed the sauna heater and other facilities to Vic Tanny, and that to permit proof of oral express warranties would violate the parol evidence rule. This contention is untenable and runs counter to the uniform commercial code, which provides in R. C. 1302.05:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement *but may be explained or supplemented*:

"(A) by course of dealing or usage of trade as provid-

ed in section 1301.11 of the Revised Code or by a course of performance as provided in section 1302.11 of the Revised Code; and

"(B) by evidence of *consistent additional terms* unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." (Emphasis added.)

See official comment 2 and 3, U. C. C., R. C. 1302.05.

Related to R. C. 1302.05 is R. C. 1302.29(A), which provides:

"Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of section 1302.05 of the Revised Code on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable." See Comment 1, to R. C. 1302.29.

There is a genuine issue of material fact whether Balough's and Cricket's alleged oral express warranties are or are not inconsistent with the terms of the written contract selling the goods to Vic Tanny. Furthermore, there is no clause in the written contract explicitly excluding such warranties, nor any clause expressing the intent that the writing was the full and complete agreement between the parties. 21 Ohio Jurisprudence 2d 680-681, Evidence, Section 660.

Accordingly, the summary judgment in favor of defendants Balough and Cricket and against Vic Tanny on its Third-Party Complaint was granted contrary to law. The summary judgment entered by the Court of Common Pleas of Lucas County is reversed and the cause is remanded to that court for further proceedings according to law.

*Judgment reversed.*

POTTER, P. J., and WILEY, J., concur.