**PRICE BROTHERS COMPANY, Plaintiff-Appellee Cross-Appellant,**

v.

**PHILADELPHIA GEAR CORPORATION, Defendant-Appellant Cross-Appellee.**

Nos. 78–3088, 78–3089.

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1980.

Decided May 15, 1981.

Rehearing Denied June 18, 1981.

Robert P. Bartlett, Jr., Robert E. Portune, Estabrook, Finn & McKee, Dayton, Ohio, for defendant-appellant cross-appellee.

Neil F. Freund, Young & Alexander, Dayton, Ohio, for plaintiff-appellee cross-appellant.

Before KEITH and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This is an appeal from a judgment entered in a diversity action for breach of contract and breach of warranties. Plaintiff, Price Brothers Company, a manufacturer of reinforced concrete pipe, brought an action against Philadelphia Gear Corporation, claiming that machine components produced by the defendant and used in Price Brothers' pipe wrapping machine had failed to perform as represented. At the conclusion of a trial to the bench, the district court entered judgment for the plaintiff and awarded $125,864.15 in damages. The defendant appealed both the conclusion as to liability and the award of damages, and the plaintiff cross-appealed, asserting that the damage award was inadequate.

### I.

Among the issues raised by Philadelphia Gear's appeal is an assertion that the trial court relied on information outside the record in reaching its decision. As one basis of this contention, Philadelphia Gear alleged that prior to the trial the trial judge's law clerk had traveled from Dayton, Ohio, to Beacon, New York, and had observed the operation of the pipe wrapping machine that is at the center of this controversy. Philadelphia Gear argued that the law clerk's observations were presumably reported to the trial judge, and speculated that this report may have been relied on by the judge in making his findings. Philadelphia Gear asserted that it had no knowledge of the clerk's trip prior to its occurrence, that it therefore had no opportunity to be present when the clerk observed the machine, and that it had no opportunity to review or rebut any report made by the clerk to the judge. Philadelphia Gear argues that the fact finding potentially based on the nonevidentiary observation by the law clerk is clearly erroneous as a matter of law.

Philadelphia Gear first raised the issue of the law clerk's off-the-record involvement by a motion made after entry of judgment, pursuant to Fed.R.Civ.Pro. 59(c), asking the court to amend its findings to reflect the fact of the law clerk's visit. The district judge denied that motion without comment on the law clerk's involvement. With the record in the state just described, serious questions regarding the impartiality of the fact finding were necessarily noted by this Court on appeal. *Price Bros. Co. v. Philadelphia Gear Corp.*, 629 F.2d 444 (6th Cir. 1980).

It is imperative that a finder of fact avoid off-the-record contacts that might bias its judgment or otherwise impair its ability to fairly and objectively weigh the evidence properly submitted at trial. A judge presiding at a bench trial may not directly or indirectly, through his law clerk or by any other means, conduct an investigation outside the record and use the results of that investigation in determining the facts of a case. It need hardly be mentioned that what a judge cannot do in person he may not do by proxy. The fact that the clerk rather than the judge made the trip and observed the machine in no way alters the problem. The fair and impartial administration of justice demands that facts be determined only upon the evidence properly presented on the record. Furthermore, it is incumbent on the finder of fact to protect the appearance, as well as the fact, or its impartiality. It is fundamental that no judgment can be maintained under circumstances that suggest that the fact finder may have relied on covert, personal knowledge rather than on the evidence produced in open court and subject to review by the parties, the public, and the appellate court.

A view by the fact finder of places or objects related to a lawsuit does not *per se* destroy the fact finder's impartiality. Where the purpose of a view is to assist the fact finder to better understand evidence properly introduced, and the view itself is not considered as evidence, then the potential for prejudice to a party not present at the view is minimized. In contrast, where the fact finder's observations upon a view are used as evidence to determine the facts, then the procedural safeguards of a trial, including the rules of evidence and the participation of the parties must apply.

Unfortunately, from the record originally presented to this Court it could not be determined if the trial judge's law clerk had observed the pipe wrapping machine, and if such an observation did occur, how it was used by the trial judge. Accordingly, we remanded for an evidentiary hearing on the questions of whether the law clerk had viewed the machine, what the law clerk reported to the trial judge, when the defendant learned of the view by the clerk, whether the defendant consented to the view, and, most importantly, what use the trial judge made in deciding the case of whatever the law clerk had observed.

On remand, a district judge not previously involved in this case conducted a hearing directed at the questions recited above. Testimony was elicited from the trial judge's law clerk and secretary, attorneys for both parties, and other witnesses. In addition, the trial judge submitted a statement concerning the matters that necessitated the remand.

The undisputed testimony from the hearing answers several of the questions presented. The law clerk did, at the direction of the trial judge, travel to New York and observed the operation of the pipe wrapping machine at the premises of the plaintiff. Counsel for neither party were present. The clerk's conversations with plaintiff's employees were limited to identifying the machine that the clerk had come to see and identifying a part of the machine in response to a question from the clerk.

It is unfortunate that our remand "for an evidentiary hearing and report" (629 F.2d at 447) was interpreted by the district judge conducting the hearing to mean that no findings of fact were required of him. We are unable, on the basis of the cold record of the hearing, to resolve conflicting testimony as to when the defendant first learned of the law clerk's view of the machine and whether defendant consented to it. Fortunately, however, the questions answered by the undisputed testimony produced at the hearing and by the trial judge's statement do permit us to resolve the issue of whether the trial judge's fact finding was critically impaired by his law clerk's off-the-record observations and report. Thus, whether the defendant consented to the view by the clerk and is thus estopped from asserting prejudice based on that view become irrelevant.

The view involved in this case was more than a simple observation of the place where a specified event was alleged to have occurred. The subject viewed here, the machine, was under the control of the plaintiff. The plaintiff had the opportunity to manipulate what the law clerk saw in order to present an image most favorable to the plaintiff. The defendant was not present to learn what the law clerk observed, what conversations the law clerk had with plaintiff's employees, or what impressions the law clerk conveyed to the trial judge. Obviously, the defendant could not rebut any of the off-the-record information that the trial judge received from this source. These factors created a presumption of prejudice to the defendant in the trial judge's determination of facts that must be rebutted before his decision can stand.

■ Based on the undisputed testimony produced at the hearing on remand, we conclude that the presumption of prejudice arising from the law clerk's report of off-the-record observations has been overcome. The law clerk's testimony and the statement of the trial judge establish that the sole purpose of the clerk's trip was to observe the operation of the pipe wrapping machine and describe it to the judge so that he might be better able to understand the evidence to be produced at trial. There is no indication that the trial judge considered the law clerk's report as evidence or that the judge was improperly influenced in his fact finding by the clerk's report. Since the trial judge's fact finding was not based on the off-the-record contact of the clerk's view, any error that may have occurred in not obtaining the parties' consent to that view did not result in prejudice and was harmless. We therefore conclude that the specter of prejudice created by the judge's off-the-record contact with material evidence has been removed, and that the trial

judge's findings were not biased by his law clerk's view of the wrapping machine.

## II.

Philadelphia Gear has appealed both the trial court's conclusion that Philadelphia Gear breached express and implied warranties of merchantability and fitness and the court's determination of damages. Price Brothers has also appealed the trial court's damages determination. Because we conclude that the trial court erred in finding that implied and express warranties were breached by Philadelphia Gear, we do not reach the question of damages.

Price Brothers had for many years prior to the events of this controversy wrapped concrete pipe with wire by means of complex machinery of Price Brothers' own design. Price Brothers decided to expand its operations to the east coast by constructing a new manufacturing plant at Beacon, New York. During the planning stages for the new plant, a Price Brothers engineer read a journal article describing a new design in disc clutch and drive units manufactured by Philadelphia Gear for commercial applications. Price Brothers' engineer contacted Philadelphia Gear by telephone and discussed the feasibility of replacing certain of the components in Price Brothers' pipe wrapping machine with components manufactured by Philadelphia Gear. Philadelphia Gear provided Price Brothers with sales literature and technical manuals describing the Philadelphia Gear components and arranged for a contact between Price Brothers and Philadelphia Gear's local sales representative in Price Brothers' area. Price Brothers' engineers had subsequent discussions with Philadelphia Gear's sales representatives regarding the possible use of certain Philadelphia Gear components in Price Brothers' new machine. Price Brothers ultimately decided to purchase two components from Philadelphia Gear for use in the pipe wrapping machine that was to be constructed in the new plant. Price Brothers submitted a purchase order to Philadelphia Gear specifying certain performance characteristics of the components ordered, and Philadelphia Gear accepted this order by acknowledgment. After Price Brothers' new plant was completed, Price Brothers experienced difficulty with its pipe wrapping machine. Price Brothers attributed these problems to an alleged failure of the Philadelphia Gear components to perform as warranted.[1]

The trial court's conclusion that Philadelphia Gear, "... breached both express and implied warranties of merchantability and fitness for a particular purpose," is based on its finding that Philadelphia Gear misrepresented how the components would perform once installed in Price Brothers' much larger and more complex wrapping machine. The trial court found that one instance of this misrepresentation was a journal article describing Philadelphia Gear's new design for the components in question. That article was published before Philadelphia Gear was first contacted by Price Brothers. Additionally, the trial court found that Philadelphia Gear's sales literature and technical manuals, as well as verbal assurances by Philadelphia Gear's sales representatives concerning the use of the components in Price Brothers' machinery, also overstated the capabilities of the Philadelphia Gear components in Price Brothers' application. These misrepresentations each occurred prior to any sales agreement between the parties. Subsequent to these events, Price Brothers tendered a purchase order to Philadelphia Gear. That order contained specifications of performance characteristics, apparently arrived at with Philadelphia Gear's assistance, for each of the two components that Price Brothers offered to purchase from Philadelphia Gear. Philadelphia Gear's acceptance repeated these specifications.

1. Since the contract for the sale of Philadelphia Gear's components to Price Brothers was a transaction in goods bearing a reasonable relationship to the forum state of Ohio, the Ohio Uniform Commercial Code is applicable to questions of sales warranties. Ohio Rev.Code Ann. § 1301.05 (Page).

■ Express warranties under the Ohio Uniform Commercial Code (UCC) are contractual in nature. They arise only where a promise by the seller or a description of the goods to be sold is made a part of the basis of the parties' bargain. Ohio Rev.Ann. § 1302.26 (Page). The trial court made no express findings that the journal article, sales literature, or the sales representatives' assurances were made a basis of the bargain of the parties. However, the court's conclusion that Philadelphia Gear breached express warranties because these statements were inaccurate implies a finding that these statements were in fact a part of the parties' bargain. As a finding of fact, this Court will not set aside a determination that the journal article, sales literature, or sales representatives' assurance was a basis of the bargain unless that finding is clearly erroneous.

■ The entire written contract of the parties in this case consists of Price Brothers' purchase order and Philadelphia Gear's acknowledgment. Nothing in these documents incorporates the journal article, sales literature, or sales representatives' assurances in the written agreement. The UCC does not require that express warranties be made a part of the written agreement of the parties, and express warranties may be added by proof of oral warranties so long as the writing is not itself a complete integration of the agreement. *Centennial Ins. Co. v. Vic Tanny International*, 46 Ohio App.2d 137, 346 N.E.2d 330, 336 (1975). However, any statements not incorporated in the written sales agreement must be shown to be a part of the bargain of the parties before they can be recognized as express warranties. In order to determine whether the pre-contract statements of Philadelphia Gear were in fact a basis of the bargain and thus an express warranty, or whether they were merely a seller's "puffing,"[2] the court should consider the circumstances surrounding the transaction, the reasonableness of the buyer in believing the seller, and the reliance placed on the seller's statements by the buyer. 1 A. Squillante & J. Fonseca, The Law Of Modern Commercial Practices 236, § 3:40 (revised ed. 1980). On the record of this case before this Court, which adequately documents the sales transaction, any finding that Philadelphia Gear's journal article, sales literature, or its sales representatives' assurance was a basis of the bargain must leave this Court with a ". . . definite and firm conviction that a mistake has been committed," and that the finding is therefore erroneous. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The purchase order submitted by Price Brothers to Philadelphia Gear enumerated various performance specifications for each of the two components ordered. These specifications are persuasive indications that Price Brothers carefully considered its needs, albeit with Philadelphia Gear's help, and ordered components with those specific needs in mind. Such specificity is antithetical to any finding that Price Brothers relied on nonspecific, precontract statements in a journal article as a basis for purchasing Philadelphia Gear components.

■ The representatives of Price Brothers who participated in negotiations with Philadelphia Gear were engineers who were, or should have been, intimately familiar with the complicated pipe wrapping machine designed by Price Brothers in which Philadelphia Gear's components were to be installed. These "experts" were in at least as good a position as Philadelphia Gear's representatives to judge whether components meeting the purchase order specifications would do the job which Price Brothers intended them to do. There is no contention on this appeal that Philadelphia Gear's components failed to meet the specifications provided by Price Brothers' purchase order. If Philadelphia Gear was in error in its assurances that components meeting the purchase order specifications would perform in a certain manner once installed in

---

2. "Puffing" is recognized by the UCC express warranty section, Ohio Rev.Code Ann. § 1302.-26(B), which states that the seller's opinion or commendation of the goods does not create a warranty.

Price Brothers' machinery, then Price Brothers' experts should have recognized this error as either "puffing" or falsehood. The expertise of Price Brothers' representatives, and their familiarity with the requirements of Price Brothers' pipe wrapping machine enabled them to make an independent assessment of the adequacy of the proposed components for the tasks assigned to them. The obligation of good faith imposed on the parties by Ohio Rev.Code Ann. § 1301.09 (Page) prevents Price Brothers from remaining silent in the face of known overstatements of performance by Philadelphia Gear and then asserting that those falsehoods were a basis of the bargain. Where both parties to a contract are merchants who are on equal footing with respect to the subject matter of their transactions, and their sales agreement is reduced to a writing that specifies technical requirements for the goods sold, it would stretch reason beyond its limits to find that the buyer relied on verbal assurances by salesmen and writings intended for unspecified general audiences as a part of the basis of the bargain. Consequently, the finding that the precontract sales literature, journal article, and sales representatives' assurances were a basis of the Price Brothers and Philadelphia Gear agreement is clearly erroneous and the trial court's conclusion that Philadelphia Gear breached express warranties must be set aside.

The trial court concluded that Philadelphia Gear had breached implied warranties of merchantability and of fitness for a particular purpose. Under the UCC these warranties arise by operation of law when certain factual circumstances attend a sales transaction. They do not depend on the bargain of the parties for their existence.

The existence of an implied warranty of fitness for a particular purpose is contingent on two general facts. First, the seller must be aware at the time of contracting of a particular purpose for which the buyer intends to use the goods. Second, the buyer must rely on the seller's skill or judgment to select or furnish goods suitable for that particular purpose. Ohio Rev.Code

Ann. § 1302.28 (Page). The trial court's conclusion that Philadelphia Gear breached an implied warranty of fitness for a particular purpose must be reversed because of the degree of specificity of Price Brothers' purchase order and Price Brothers' own undisputed high degree of knowledge regarding the mechanical requirements of its own pipe wrapping machine make any finding that Price Brothers relied on Philadelphia Gear's selection clearly erroneous.

In *Standard Packaging Corp. v. Continental Distilling Corp.*, 378 F.2d 505 (3rd Cir. 1967), a buyer ordered boxes with acetate wrappers for the purpose of packaging liquor bottles. The seller supplied the boxes according to the purchase order description. When the buyer attempted to insert the boxes into standard shipping cartons, the acetate wrappers were damaged. The buyer contended that the seller was aware of the purpose for the boxes and that the buyer had relied on the seller to supply boxes that would serve that purpose. The court, interpreting § 2–315 of the Uniform Commercial Code (identical to Ohio Rev. Code Ann. § 1302.28 (Page)), held that no warranty of fitness for a particular purpose was implied in the parties' transaction because the buyer's reliance was lacking. The court stated that, " . . . where a specific item as delivered fits the description called for by the buyer, there is no breach when the contemplated use of the goods proves inappropriate to their inherent capabilities and design." *Id.* at 508. *In accord, Steel Sanitary Co. v. Pangborn Corp.*, 38 Ohio App. 65, 175 N.E. 615 (1930) (where contract for manufacture and sale of machinery described in detail, there is no warranty of fitness for use intended); 3 A. Squillante & J. Fonseca, Williston On Sales 129, § 19–6 (4th ed. 1974). In the present case Price Brothers ordered components from Philadelphia Gear by use of a purchase order specifying performance criteria. It is of no avail to Price Brothers that Philadelphia Gear may have assisted Price Brothers in arriving at these specifications. The fact that the specifications were jointly arrived at by Price Brothers engineers and Phila-

delphia Gear representatives only emphasizes the fact that Price Brothers exercised its own judgment in selecting the components ordered and did not rely on Philadelphia Gear to supply components.

■ Furthermore, the implied warranty of fitness of UCC § 1302.28 is not readily applicable when the buyer enjoys skill or knowledge equal to that of the seller. Indeed, some courts have concluded that the implied warranty of fitness is unavailable when the skill and knowledge of the buyer is superior to that of the seller. *E. g., Prince v. LeVan*, 486 P.2d 959, 969 (Alaska 1971). Price Brothers was well acquainted with its own particular needs, and while Price Brothers might properly seek consultation with Philadelphia Gear regarding Philadelphia Gear's components, it would be unreasonable for Price Brothers to completely defer judgment to Philadelphia Gear to select components for inclusion in Price Brothers' unique equipment. The facts of Price Brothers'. knowledge and skill and the specific purchase order make actual reliance by Price Brothers on Philadelphia Gear so unlikely that a finding of such reliance would be clearly erroneous. Therefore, no warranty of fitness for a particular purpose arose from the sales transaction in this case, and the trial court's conclusion that Philadelphia Gear breached such a warranty was error.

■ The trial court also concluded that Philadelphia Gear breached an implied warranty of merchantability. This warranty is breached when goods are not of an acceptable quality when compared to that generally acceptable in the trade for goods of the kind. Ohio Rev.Code Ann. § 1302.27 (Page) (Official Comment 2).

■ In the present case the trial court made no finding that Philadelphia Gear components failed to meet the standards for goods of their kind. Indeed, from the record of this case it is difficult to imagine how such a standard of merchantability could have been determined. The previous-

ly referred to journal article describing Philadelphia Gear's designs clearly indicated that the Philadelphia Gear components were of a "new" type in the industry.[3] Where there is ". . . no trade for an experimental machine and no proof or evidence pointing to a record of past years on which a determination of its ordinary purpose could be found, there is no implied warranty created in the instance." 3 A. Squillante & J. Fonseca, Williston On Sales 81, § 1809 (4th ed. 1974), citing, *Axion Corp. v. G.D.C. Leasing Corp.*, 359 Mass. 474, 269 N.E.2d 664 (1971).

■ In the present case, the parties' skill and knowledge in matters relating to their transaction were essentially equal. They contracted for the sale of components to be installed in a highly complex piece of machinery. The components had never before been used in machinery of that type. The specific machinery was itself new and had never been operated with or without the components. In these circumstances no average or usual standards for determining ordinary performance or quality for the components can be determined, and no warranty of merchantability arises from the transaction. Therefore, the trial court's conclusion that Philadelphia Gear breached a warranty of merchantability was error.

For the reasons stated above the judgment of the district court awarding $125,864.15 to Price Brothers is reversed.

MERRITT, Circuit Judge, concurring.

I agree with the Court's holding in Section II. of the opinion that the defendant, Philadelphia Gear, did not breach express and implied warranties and, therefore, agree with the result reached by the Court. I am unable to agree, however, that the evidence in the current record overcomes the "presumption" or "specter" of "prejudice" described so clearly by the Court as arising from the law clerk's unattended efforts to gather and report evidence about the machine to the District Court. Such a

---

**3.** This fact makes Price Brothers' argument that Philadelphia Gear misled Price Brothers regarding the "experimental" nature of the components unpersuasive.

unilateral, irregular method of judicial investigation and decision—conducted at the direction of a court without satisfactory notice by a witness who then privately advised the court of his observations, all without cross-examination—turns the rules of evidence upside down and is clearly at odds with our adversary system of justice. A more forceful and conclusive showing is necessary to convince me that this kind of error had no prejudicial effect upon the trial and should, therefore, be disregarded.