MARHOFER, d.b.a. Automotive Business Associates, Appellant,

v.

BAUR et al., Appellees.

[Cite as *Marhofer v. Baur* (1995), 101 Ohio App.3d 194.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2265–M.

Decided Feb. 15, 1995.

*Jerome G. Reidy*, for appellant.

*Mark I. Wachter*, for appellees.

DICKINSON, Judge.

Plaintiff John A. Marhofer has appealed from the judgment of the Medina County Court of Common Pleas in favor of defendants Daniel E. Baur and Courtesy Pontiac Olds, Inc. ("Courtesy") in this breach of contract action. He has argued that the trial court (1) incorrectly granted summary judgment dismissing his claim against Baur, and (2) incorrectly determined that Courtesy had not breached the agreement at issue. This court affirms the judgment of the trial court because (1) Baur was not a party to the agreement at issue, and (2) Courtesy did not breach the agreement at issue.

I

Marhofer is engaged in the business of facilitating sales of automobile dealerships. He does business under the name "Automotive Business Associates" ("ABA"). Baur is the former president of Courtesy, which owned an automobile dealership in Wadsworth, Ohio. On June 14, 1990, Marhofer and Courtesy entered into an agreement in which Marhofer agreed to assist in the sale of Courtesy's Wadsworth dealership. Pursuant to the agreement, Courtesy agreed to pay Marhofer $50,000 for any contract for the purchase of the dealership that he procured which was "acceptable" to Courtesy.

Shortly after the execution of the agreement, Marhofer presented Courtesy a written offer for the dealership that was far below its asking price. Courtesy rejected that offer as unacceptable.

During late 1990 or early 1991, Marhofer mentioned Bishop Motors, an entity owned by Glen and Tom Bishop, to Baur as a potential purchaser of the dealership. Marhofer engaged in discussions with the Bishops, but those discussions never resulted in his presenting an offer to Courtesy from them. Baur and Marhofer had no further discussions regarding Bishop Motors as a potential buyer.

On October 14, 1991, Tom Bishop contacted Baur directly in order to express an interest on the part of Bishop Motors in purchasing the Wadsworth dealer-

ship.  On November 20, 1991, Courtesy and Tom Bishop entered into an agreement pursuant to which Bishop agreed to purchase the dealership.

Marhofer filed this action against Baur and Courtesy in the Medina County Court of Common Pleas on April 3, 1992.  He alleged that he was entitled to recover $50,000 from them as a commission on Courtesy's sale of the dealership to Bishop.

On June 23, 1993, Baur and Courtesy moved for summary judgment.  The trial court denied the motion insofar as it related to Courtesy.  It determined, however, that Baur had signed the agreement only on behalf of Courtesy rather than in his personal capacity.  Accordingly, it concluded that there were no genuine issues of material fact and that Baur was entitled to judgment dismissing Marhofer's claim against him as a matter of law.

Marhofer's claim against Courtesy was tried to the court on August 5, 1993.  On August 30, 1993, the trial court entered findings of fact and conclusions of law in which it found that Marhofer had failed to procure a contract acceptable to Courtesy and concluded that Courtesy was entitled to entry of judgment in its favor dismissing Marhofer's claim against it.  Marhofer timely appealed to this court.

## II

### 1

Marhofer's first assignment of error is that the trial court incorrectly granted summary judgment dismissing his claim against Baur.  Specifically, he has argued that there were genuine issues of fact regarding whether Baur was personally liable on the agreement at issue.

In reviewing a trial court's grant of summary judgment, this court applies the same standard a trial court is required to apply in the first instance:  whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law.  *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123.  "An officer of a corporation is not personally liable on contracts * * * for which his corporate principal is liable, unless he intentionally or inadvertently binds himself as an individual."  *Centennial Ins. Co. v. Tanny Internatl.* (1975), 46 Ohio App.2d 137, 142, 75 O.O.2d 115, 118, 346 N.E.2d 330, 334.

Baur's signature appears at the end of the agreement only once, directly below the typed words "Courtesy Pontiac Olds, Inc."  The typed word "By," followed by a colon, immediately proceeds his signature, and his signature is followed by the designation "Pres."  Marhofer has not suggested that Baur signed the agreement in his personal capacity.  Rather, he has argued, in reliance upon

*Spicer v. James* (1985), 21 Ohio App.3d 222, 21 OBR 236, 487 N.E.2d 353, that "[w]hether a corporate officer is personally liable upon a contract depends not only upon the form of the signature, but also upon the form of the promise." Appellant's Brief at 7.

According to Marhofer, the "form of the promise" contained in the agreement indicates that it was contemplated that Baur would be personally liable for Courtesy's undertaking. He has pointed specifically to the agreement's opening paragraph:

"MEMORANDUM OF AGREEMENT entered into this 14th day of June 1990, by and between John A. Marhofer, DBA, AUTOMOTIVE BUSINESS ASSOCIATES, of Cuyahoga Falls, Ohio (herein 'ABA'), Courtesy Pontiac Olds Inc. and Daniel E. Baur, its Pres; collectively, jointly and severally, 'SELL-ER.[']"

He has argued that the reference to Courtesy "and" Baur, coupled with the use of the words "collectively, jointly and severally," demonstrates that Baur was intended to be a party to the agreement. He has also noted that the word "SELLER" is used at some places in the agreement and the word "SELLERS" is used at other places in the agreement.

■ There is no significance to the use of the words "SELLER" and "SELL-ERS" in the agreement. There is no pattern to their use; rather, they are used interchangeably. If the word "SELLERS" had been intended to refer to both Courtesy and Baur and the word "SELLER" had been intended to refer to only one or the other, the word "SELLERS" would have appeared at the close of the opening paragraph instead of the word "SELLER." Marhofer prepared the agreement and, in doing so, he used the singular and plural interchangeably. That use amounted to nothing more than a clerical error. The issue presented by Marhofer's first assignment of error, therefore, is whether the appearance of Baur's name in the opening paragraph of the agreement, coupled with the use of the words "and" and "collectively, jointly and severally," was enough to personally bind him to its terms.

■ The opinion in *Spicer v. James, supra,* 21 Ohio App.3d 222, 21 OBR 236, 487 N.E.2d 353, does contain a single sentence that appears to support Marhofer's position that an individual who signs a contract only in his corporate capacity could be held personally liable based upon the "form of the promise":

"Whether a corporate officer is personally liable upon a contract depends upon the form of the promise and the form of the signature." *Id.* at 223, 21 OBR at 238, 487 N.E.2d at 354.

Review of the full opinion, however, demonstrates that it in fact stands for the proposition that the form of the signature controls over the form of the promise when there is a discrepancy between the two.

The appellants in *Spicer* were officers of a corporation who had signed a lease for property utilized by the corporation:

"Appellants' signatures were first signed in an individual capacity and did not have any corporate designation after them. After their second set of signatures, appellants indicated their corporate title; for example, appellant Bob Burn has 'V.P.' written after his signature and appellant Douglas James has 'Pres.' written after his signature. Appellants' first set of signatures did not have a corporate designation appearing after them." *Id.* at 223, 21 OBR at 238, 487 N.E.2d at 354–355.

The court concluded that the appellants were personally liable on the lease despite the fact that the body of the lease always referred to the tenant as the corporation or in the singular. Despite the sentence in the opinion relied upon by Marhofer, therefore, the full opinion in *Spicer* stands for the proposition that, when there appears to be a discrepancy between the form of the promise and the form of the signature, it is the form of the signature that controls. In the absence of facts that justify piercing the corporate veil, an officer is not personally liable on a contract that he has only signed in his corporate capacity. See *Cent. Benefits Mut. Ins. Co. v. RIS Administrators Agency, Inc.* (1994), 93 Ohio App.3d 397, 403, 638 N.E.2d 1049, 1053–1054.

Inasmuch as Baur only signed the agreement at issue as president of Courtesy, there were no genuine issues of material fact, and he was entitled to judgment as a matter of law dismissing Marhofer's claim against him. Marhofer's first assignment of error is overruled.

### 2

Marhofer's second assignment of error is that the trial court incorrectly determined that Courtesy had not breached the agreement at issue. Specifically, he has argued that he fulfilled his duty as a "business finder" by finding the ultimate buyer, Bishop, and providing him with information about Courtesy. According to Marhofer, Courtesy breached its obligation to him by refusing to pay him a commission of $50,000.

Marhofer's argument, however, is based upon cases involving contracts with terms different from the terms of the agreement at issue in this case. The rights and obligations of the parties to the agreement at issue must be determined based upon the language they chose to use in that agreement. In particular, "Paragraph 7" of the agreement provided the circumstances under which Marhofer would be entitled to receive a commission:

"Compensation to ABA. As compensation for services rendered hereunder by ABA, SELLERS shall pay a fee to ABA in the amount of $50,000.00 flat for any contract procured by ABA and acceptable to SELLER. BUYER can be anybody acceptable to SELLER and not necessarily anyone who has discussed Dealership with SELLER before."

The evidence was undisputed that Marhofer never presented an offer which was acceptable to Courtesy. Marhofer presented Courtesy with only one offer, which Baur found unacceptable. Although Marhofer claimed he "found" Bishop, the ultimate buyer, he conceded that he never presented Courtesy with an offer from him. He did not perform as required by Paragraph 7. Marhofer's second assignment of error is overruled.

## III

Marhofer's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and BAIRD, J., concur.