OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Erie County Court which ordered appellants, David and Kimberly Heyl, to reimburse appellee, David Scheid, the sum of $6,200 for money Scheid paid to appellee, 84 Lumber Company, in settlement of a debt originally incurred by Heyl Construction Company, Inc. ("Heyl Inc."). For the reasons that follow, we reverse the judgment of the trial court.
On appeal appellants set forth the following as their sole assignment of error:
 "1. The Trial Court's decision to pierce the corporate veil is against the manifest weight of the evidence."
On March 26, 1991, appellee signed an application for credit from 84 Lumber on behalf of Heyl Inc. The application listed the corporation as the applicant, and further listed appellant David Heyl and appellee as owners, partners and/or officers of the corporation. Appellee, a vice-president of Heyl Inc., signed the application as "David Scheid, V.P." Above appellee's signature, the application stated:
 "BY SIGNING BELOW I HEREBY CERTIFY THAT I AM A PRINCIPAL OF THE ABOVE BUSINESS, AND I DO PERSONALLY GUARANTEE THIS ACCOUNT AND PAYMENT OF ANY SUMS DUE BY THE ABOVE-NAMED BUSINESS, AND THAT I HAVE READ ALL OF THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS APPLICATION, AND THAT I UNDERSTAND AND AGREE TO THE SAME, AND THAT ALL OF THE INFORMATION CONTAINED IN THIS APPLICATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE."
Below appellee's signature, the application stated that "[i]f Applicant is a corporation, the President must sign the application." Heyl Inc.'s president, David Heyl, did not sign the application.
The business relationship between appellee and the Heyls disintegrated and, in early 1992, Scheid left Heyl Inc. Sometime between October 26, 1996 and May 4, 1997, Heyl Inc. purchased $11,397.54 in construction materials from 84 Lumber on credit, which was never repaid. On October 16, 1997, 84 Lumber filed the complaint herein against Heyl Inc. and David Heyl, which was later amended to include appellee as a defendant. On October 23, 1998, Heyl Inc. and David Heyl filed an answer. On February 2, 1998, the trial court filed a judgment entry in which Heyl Inc. consented to a judgment in favor of 84 Lumber in the amount of $11,397.54.
On April 10, 1998, appellee filed an answer and a third-party complaint against David and Kimberly Heyl. In his complaint, appellee asserted that, as the sole shareholders of Heyl Inc., the Heyls were personally liable to Scheid for the 84 Lumber account. The complaint further alleged that the Heyls had agreed to "hold [appellee] forever harmless from any `company-related' claims" pursuant to a previous settlement agreement.
On July 13, 1998, the trial court filed a judgment entry in which it stated that, after "extensive negotiations," appellee had agreed to pay 84 Lumber the sum of $6,200 on or before October 13, 1998, in full satisfaction of "the claim of Plaintiff 84 Lumber Company v. David Scheid." On that same day, a trial to the court was held on the remaining issue of whether David and Kimberly Heyl, as the sole shareholders of Heyl Inc., could be held personally liable to appellee for the amount he had agreed to pay to 84 Lumber. Testimony was presented at the trial by 84 Lumber's assistant manager, Scott Sandy, David Heyl, Kimberly Heyl, and appellee.
Sandy testified that appellee signed the credit application on behalf of Heyl Inc. and that, at the time of trial, the account had an outstanding balance of $11,397.54. The Heyls both testified that they are the sole shareholders of Heyl Inc., and that the materials obtained on credit from 84 Lumber were used on four different construction jobs. David and Kimberly Heyl further testified that they were careful to observe all the formalities of the corporate entity, and that they did not pay personal bills with corporate funds.
Kimberly Heyl testified that David Heyl's and her salaries and their health insurance benefits were paid from money collected by Heyl Inc. during the same time that bills such as the 84 Lumber account went unpaid. David Heyl testified that he had been in the construction business since 1978, and that he incorporated the business in 1989 or 1990. David Heyl further testified that he was regularly reimbursed from corporate funds for personal expenditures which related to Heyl Inc.
Appellee testified at trial that David Heyl had asked him to open the 84 Lumber account in 1991, and the application was prepared by David Heyl's secretary. Appellee further testified that he signed the credit application as a vice president of Heyl Inc., and that when he left the business in 1992 no money was owed to 84 Lumber. Appellee stated that after he left 84 Lumber, he was sued by David and Kimberly Heyl for claims unrelated to the 84 Lumber account, and that he paid the Heyls $5,000 to settle any and all "company related claims" which might thereafter be brought against him.
At the close of appellee's testimony, evidence was introduced into the record in the form of copies of account records and invoices documenting Heyl Inc.'s $11,397.54 debt to 84 Lumber, and a copy of the credit application signed by appellee. Also admitted was a copy of a "receipt" evidencing the parties' settlement agreement, dated September 7, 1994; however, the agreement specifically excepted "the possibility of a civil action based on additional facts as may be discovered by [the parties] subsequent to [September 7, 1994]."
On August 14, 1998, the trial court filed a judgment entry in which it found, after reviewing the testimony presented at trial, that:
 "David and Kimberly Heyl had sole control over Heyl Construction, Inc. and made all decisions with respect to what bills to be paid, including their personal salaries and expenses. The Court further finds that to allow David and Kimberly Heyl to avoid personal liability while imposing same upon David Scheid, simply stretches this Courts of [sic] sense of equity and fairness to the breaking point."
Accordingly, the court ordered David and Kimberly Heyl to pay appellee the sum of $6,200 plus court costs and interest from the date of the judgment. On September 11, 1998, a timely notice of appeal was filed.
Appellants argue in support of their assignment of error that the trial court's decision to pierce the corporate veil and hold David and Kimberly Heyl personally liable to appellee is against the manifest weight of the evidence.
It is axiomatic that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, at the syllabus.
It is a well-established principle of corporate law that where a valid corporation exists, a corporate officer will not be held personally responsible for the liabilities of that corporation. Centennial Ins. Co. v. Tanny Internatl. (1975),46 Ohio App.2d 137, 142. However, an exception to this rule exists in equity to prevent shareholders from using the corporate entity for criminal or fraudulent purposes. Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274,287. Accordingly:
 "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Belvedere, supra, at paragraph three of the syllabus.
In Collum v. Perlman (Apr. 30, 1999), Lucas App. No. L-98-1291, unreported, this court, applying the Belvedere test, held that a creditor of a closely-held corporation could not pierce the corporate veil and hold the corporation's owner/sole shareholder liable for a debt in the absence of evidence that the shareholder "exercised control over [the corporation] in such a manner as to commit fraud or an illegal act against [the creditor]." Id.
As set forth above, the 84 lumber credit application required the signature of Heyl Inc.'s president, which in this case was David Heyl, not appellee, David Scheid. Further, appellee signed the application at David Heyl's request and only in his capacity as vice president of Heyl Inc. In spite of these obvious flaws in the execution of the application, 84 Lumber elected to extend credit to Heyl Inc. Accordingly, an issue initially existed as to whether appellee could be held liable to 84 Lumber for the debt incurred by Heyl Inc. However, appellee's decision to settle 84 Lumber's claim against him for $6,200, before the trial in this matter took place, rendered that issue moot. Finally, the record contains no evidence that David and/or Kimberly Heyl had anything to do with appellee's decision to enter into a settlement agreement with 84 Lumber.
This court has considered the entire record of proceedings before the trial court and, upon consideration thereof and the law, finds that: 1) contrary to the trial court's finding, liability to 84 Lumber was not involuntarily "imposed" on appellee in this case; and 2) the record contains insufficient evidence of illegal and/or fraudulent acts to support the trial court's decision to disregard the corporate form and hold David and Kimberly Heyl personally liable to appellee for the debt which appellee agreed to pay to 84 Lumber. Accordingly, the trial court erred by awarding appellee a judgment in the amount of $6,200 against David and Kimberly Heyl, and appellants' sole assignment of error is well-taken.
The judgment of the Erie County Court is hereby reversed and this case is remanded to the trial court for further proceedings consistent with the opinion. Court costs of these proceedings are assessed to appellee.
 JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. JUDGE
Melvin L. Resnick, J. JUDGE
Richard W. Knepper, J. JUDGE
CONCUR.